STATE of Missouri, Respondent,

v.

Danny Ray HAHN, Appellant.

No. 62357.

Supreme Court of Missouri,
Division No. 1.

July 14, 1981.

Lawrence A. Smith, Springfield, for appellant.

Madeleine O. Birmingham, Asst. Atty. Gen., Jefferson City, for respondent.

TURNAGE, Special Judge.

Danny Ray Hahn was found guilty of murder in the first degree, § 565.003, RSMo 1978, and sentenced to life imprisonment by a jury. Jurisdiction is vested in this court by Mo.Const. Art. V, Sec. 3.

On this appeal Hahn contends the court should have sustained his motion to quash the jury panel because all but one member of the panel had heard of the incident and the court should have suppressed his statement. Affirmed.

Early on the morning of July 22, 1979, the body of a young clerk in charge of the Git-N-Go store at Battlefield and Lone Pine Streets in Springfield was found in the rear of the store. He had been shot in the head and face. The cash register was open and it was determined that $89.50 was missing.

The following December a woman in police custody on an unrelated incident told police officers of information about the Git-N-Go murder which she had received from Myra Willoughby. The police subsequently talked with Myra and took a written statement from her. She told them that she had been at the Git-N-Go store with her boy friend, Danny Hahn, on the night of the murder. She said that Hahn had been forced to participate in the crime by two brothers and Hahn had told her if she told the police anything about her knowledge of the crime they would inflict harm on one of her children.

Detectives Jared and Patton made arrangements to take Myra to Jefferson City to talk with Hahn, who was then in the state penitentiary on another charge. The

three arrived at Troop F Headquarters of the State Patrol in Jefferson City, and, about 11:50 P.M. Hahn was brought there by two guards from the penitentiary. Hahn was allowed to greet Myra but she was asked to remain in another room while the detectives talked with Hahn.

The conversation with Hahn took place in a large room with several desks, described as being occupied by a secretarial pool. Hahn was handcuffed to a waist chain, but one of the handcuffs was removed to allow him to smoke, drink coffee and cokes.

Detective Jared told Hahn that they were there to talk with him about his forced participation in the murder so that they could get information from him before arresting the two brothers he had named as being the real perpetrators of the crime. Hahn told of being forced by the two brothers to help in the crime. He said one of the brothers shot the clerk and then threw the gun to Hahn and required Hahn to assist in pulling the body of the clerk into the backroom. Hahn said he then went to the cash register and took the money out.

The conversation with Hahn continued about fifteen minutes when Hahn mentioned that he had gone to the cash drawer and removed the money. At this point Detective Jared cut off the interrogation and advised Hahn that he was beginning to implicate himself in the crime. Jared thereupon called the prosecutor of Greene County and advised him of what had happened. Jared then requested the state trooper who was present to give him a copy of the *Miranda* warning. About 12:30 P.M. Jared read the *Miranda* warning to Hahn and had Hahn read the warning and inquired if Hahn understood. Hahn said that he understood his rights and that he desired to make a statement and signed the waiver form.

Jared began questioning Hahn concerning the murder and very quickly felt that Hahn was not telling the truth. When he told Hahn he did not believe his story, Hahn repeated his story about being forced to participate. Jared then advised Hahn that he would go back to Springfield, arrest the

two brothers and confront them with Hahn's story. Hahn thereupon told Jared that would not be necessary because the brothers were in fact not involved.

Hahn made an oral statement in which he told of riding around with Myra Willoughby in her car and after Myra had fallen asleep he went to the Git-N-Go store about 4:00 A.M. He parked a short distance away and entered the store with a gun he had stolen a few days previously from a motel where he was staying. He entered the store and selected a ham and cheese sandwich, went to the clerk and presented the purchase in order to have the clerk open the cash drawer. He then pulled his gun and told the clerk to hand him the money. Hahn said the clerk told him he could have the money, then said: "Please don't shoot me." Hahn said be became frightened and shot the clerk in the head and then in the face. He said the clerk fell to the floor and he pulled the body into the backroom. While pulling the body a gun fell out of a pocket and Hahn used that gun to fire at the safe in an effort to open the door, but was unsuccessful. After Hahn gave the oral statement, Jared inquired if he would be willing to give a written statement. Hahn agreed and Jared sat at a typewriter and typed questions and the answers given by Hahn. The written statement was begun at 2:51 A.M. and completed at 4:20 A.M.

Hahn was allowed to speak briefly with Myra before he was taken back to the penitentiary. Detectives Jared and Patton returned to Springfield with Myra.

■ Hahn was charged with first degree murder. During the voir dire of the jury panel it developed that all but one member of the panel had heard of the murder at the Git-N-Go store through television or newspaper reports. Examination of the panel revealed that none of the members had formed any opinion concerning the case but had only heard that the incident had occurred. Prior to his request that the entire panel be quashed, Hahn did not request that any individual be stricken from the panel because of hearing about the incident. The only request was the motion to quash the entire panel.

In *State v. Spica*, 389 S.W.2d 35, 41[9–11] (Mo.1965) [cert. den. 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966)] this court stated:

"[I]t is the general rule that familiarity alone on the part of a juror with the facts and circumstances of a case which were obtained from news reports pertaining thereto, without the formation of an opinion as to the guilt or innocence of the accused, does not necessarily require disqualification of the juror for cause."

In *State v. Cooper*, 541 S.W.2d 40, 44[5] (Mo.App.1976) the court stated that the right to a fair trial does not require that a jury panel be completely devoid of any news reports concerning the crime.

No member of the jury panel was shown to have formed any opinion concerning the guilt or innocence of Hahn as a result of the news report. Under *Spica* the fact that members of the panel had heard of the crime does not disqualify them in the absence of a showing that some member of the panel had formed an opinion concerning guilt or innocence of the defendant. Upon the bare showing that members of the panel had heard news reports of the crime, the court was correct in refusing the motion to quash the entire panel.

Hahn next contends the court should have suppressed his statement made in Jefferson City. A hearing was held on the motion at which the State produced Detective Jared who testified to the facts previously set forth concerning the taking of the statement. In addition, Jared testified that when Hahn arrived at the patrol building he was very amical. He expressed appreciation for the officers talking with him outside the prison and said he was happy to get out because he was held in a single room with nothing to do but sleep and eat. Jared stated Hahn freely and voluntarily signed the waiver form. He denied any threats or promises were made to Hahn. He denied that any threats had been made to prosecute Myra, or that anything had been said or done to coerce Hahn to sign the waiver form and statement. He said Hahn appeared normal in every way and that he said he fully understood his rights and voluntarily agreed to make a statement.

Hahn produced Myra Willoughby, Steve Gilpan and Gary Plank (the prison guards). Myra testified concerning the trip to Jefferson City and that she saw Hahn but was not present when Hahn made his statement. She did not testify to any threats, promises or mistreatment. One of the guards testified he was in the room with Hahn part of the time but remembered nothing in particular about the conversation. The other guard recalled the signing of the *Miranda* waiver form and Jared typing the statement. Neither guard heard any threats or promises made to Hahn nor did they see anything out of the way.

Hahn testified that he had suffered a finger injury and was taking Tyelox every four hours for pain. He said he was drowsy and did not really know what was going on while he was talking with Jared. He said Jared told him that Myra would be charged with murder if he did not give a statement, so he agreed to sign the statement. He said he felt if he did not sign the statement he would be pushed around quite a bit and he feared for his own safety as well as that of Myra.

At the conclusion of the hearing on the motion to suppress the court overruled the motion and found "that the defendant executed a rights waiver and the statement voluntarily, with knowledge of his rights and understanding the possible consequences of his actions."

During the trial the State produced the testimony of Detectives Jared and Patton and Trooper Shipley to show the voluntary nature of the statement. Their testimony followed closely the testimony of Jared on the suppression motion. In addition Patton said that when Jared read the *Miranda* warning to Hahn and asked if he understood it, Hahn said: "I understand my rights. I've been through this several times."

■ On this appeal Hahn contends the statement was obtained by mental coercion and was involuntary. When a motion to

suppress a statement given by a person in custody [1] on the ground that it was involuntarily given is filed, the State is required to prove by a preponderance of the evidence that the statement was voluntary. *State v. Flowers*, 592 S.W.2d 167, 168[1] (Mo. banc 1979).

In *State v. Higgins*, 592 S.W.2d 151 (Mo. banc 1979) the admission of a statement was upheld when the court found substantial evidence had been adduced to support its voluntary nature and stated that this court would defer to the trial court's finding on the credibility of the witnesses.

Both *Flowers* and *Higgins* hold that the test of "voluntariness" is an examination of the totality of the circumstances. The evidence does not show the education of Hahn, but as stated does show his age. There is no contention he did not understand his rights, nor any denial that he signed the waiver form and the statement and initialed each page. The sole contention on this appeal is that the statement was not voluntary because he was 19 years old and had been in the penitentiary about a week, and the officers began their conversation by informing him they understood he had been forced to participate in the crime.

It is true the conversation began on the theory that Hahn had been forced to participate in the crime—this was shown to have been based on the written statement of Myra. No bad faith or deception on the part of the officers is alleged or show in telling Hahn they wanted to talk with him about his forced participation in the crime.

Hahn did not testify to any coercion based on his age, the fact he was in the penitentiary or that the conversation started with a belief he had been a victim at the crime rather than the perpetrator. The testimony of Hahn concerning his drowsy state and that Myra would be charged was denied by Jared. The two guards, Patton and Shipley, corroborated Jared's testimony during trial. In that situation the trial court must have found the State's evidence more credible.

There was substantial evidence to show the statement was voluntarily made and it cannot be said that under the totality of the circumstances the court erred when it overruled the motion to suppress the statement.

The judgment is affirmed.

MORGAN, P. J., DONNELLY, C. J., RENDLEN, J., and HOUSER, Senior Judge, concur.

BARDGETT, J., not participating.

---

1. It will be assumed without deciding that Hahn was in custody on the charge here although he was in the penitentiary under another charge.