STATE of Missouri, Respondent,

v.

**Edward E. SINGLETON, Appellant.**

**No. WD 31043.**

Missouri Court of Appeals,
Western District.

June 9, 1980.

Motion for Rehearing and/or Transfers to Supreme Court Denied July 8, 1980.

4

J. Martin Anderson, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for burglary, first degree, and stealing. The jury imposed sentences of 15 years on the burglary offense and 7 years on the stealing offense. The sentences are to run concurrently. The judgment is affirmed.

The owner of the burglarized residence was on vacation from December, 1978 to March, 1979. When he returned, he discovered that his front door had been battered, his gun cabinet torn up and several items of personal property missing. The items of property consisted of a camera, jewelry and guns and were taken into possession by law enforcement officers the night of appellant's arrest. These items were later identified by the owner upon trial.

The owner testified that the guns in question were kept unloaded. He further testified that he never, at anytime, authorized appellant's entry to his home. He did not even know appellant.

The evidence in this case not only outlines the commission of the offense for which appellant stands convicted, but illustrates a cooperative, practical and interdependent neighbor relationship which proved effective against criminal conduct in one local neighborhood. The owner and a neighbor had an arrangement that each would watch the property of the other in the absence of either. Since the owner was on vacation, this neighbor was keeping a continued watch over his neighbor's home.

On January 8, 1979, the neighbor was preparing for bed about 10:30 p. m. He observed two men alight from an automobile at the street corner. One man was described as short and heavy, wearing a blue coat, while the other was described as tall with a beard and wearing an army-type jacket. This neighbor witnessed these two men approach the owner's home and open the front screen door. At this point, the neighbor called the police and proceeded thereafter outside with his dog and his rifle. The weather outside was bitter cold and snow was about boot top in depth upon the ground. The neighbor further observed the taller of the two men, who was carrying a blanket covering some guns and other items, leave the rear door of the owner's home. The neighbor followed a set of footprints in the snow to the breezeway of his own home, where under some bushes his dog located the taller man, who was hiding. This taller man was arrested at this location by police who had arrived at the scene.

The owner's granddaughter testified she had been in her grandfather's house, with a key and upon his request, on January 7, 1979 and that her daughter had been in the house at approximately 4:00 p. m. the day of the burglary (January 8, 1979), and the house was undisturbed on those occasions. On January 8, 1979, at approximately 11:10 p. m., she was called to her grandfather's home where she observed the front door jam broken, the door knob broken off, the bedroom ransacked and the gun cabinet opened.

Two police officers testified. Both officers testified that they were dispatched to the scene upon a report of prowlers. The first officer testified that upon his arrival, he checked the front door, and finding that it was open, proceeded to the rear of the house where he discovered the basement door open as well. This officer then followed some footprints in the snow, noting that they split into two definite sets of footprints. He followed one set to the west, where he found the neighbor and the taller man. He arrested the taller man. This officer further testified that he observed a white sheet approximately 30 feet from the point where the footprints in the snow split into two sets. He also observed, some 50 feet prior to the split in the footprints, a bedspread wrapped around the guns taken from the owner's house.

The second officer testified that upon arrival at the scene, he stationed himself on the street to the rear of the owner's home

to possibly observe any escape. He observed distinguishable footprints in the snow leading from the burglarized home to a point on the west side of another house where he found appellant lying on the ground. This officer testified that appellant, when arrested at this point, was wearing a navy or black coat.

The testimony of these two officers established that there was some difficulty in unloading one of the guns later at the police station. In addition, a third person was arrested later the same night while driving appellant's automobile. One of the officers testified that earlier in the evening (prior to the burglary) he had, while on patrol in the neighborhood, observed this third person in front of the burglarized home.

At the close of the state's evidence, appellant moved twice for a directed verdict, alleging that there had been no proof of appellant's guilt beyond a reasonable doubt. These motions were overruled. Appellant offered no evidence. Instructions were submitted to the jury. The jury returned its verdict and assessed appellant's punishment. Timely motion for new trial was filed, overruled, and this appeal followed.

Appellant alleges two points of error. First, he alleges the trial court erred in denying his claim for directed verdict because there was no proof *he entered the residence armed with a deadly weapon as charged in the information.* Second, he alleges the trial court erred in the submission of Instruction no. 6 because he was charged with *entering the residence armed with a deadly weapon*, and the instruction, contrary to both the information and law, charged him with being *armed with a deadly weapon on flight from the residence.* The alleged errors attack only Count I of the information related to the burglary offense.

■ Appellant was, by information, charged with the offense of burglary, first degree, a Class B felony under § 569.160, RSMo 1978. Since the errors on this appeal

are interrelated with the information, the evidence, the statute and a specific instruction, the pertinent statutory language, the applicable wording within the information and the specific instruction are set out as follows: [1]

1) "1. A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and *when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom,* he or another participant in the crime:

(1) Is armed with explosives or a deadly weapon; . . ."

Section 569.160, RSMo 1978 (emphasis added)

2) Information:

". . . the defendant, Edward E. Singleton, in violation of Section 569.160, R.S.Mo., committed the class B felony of Burglary in the First Degree, punishable upon conviction under Sections 558.011.-1(2), RSMo . . . the defendant, knowingly entered unlawfully in a residence located at 5901 East 83rd Street, Kansas City, Missouri, and owned by Keithel Harris for the purpose of committing the crime of stealing therein, and the defendant was armed with a deadly weapon."

3) Instruction No. 6:

"As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 8, 1979, in the County of Jackson, State of Missouri, the defendant knowingly entered unlawfully in a [sic] inhabitable structure located at 5901 East 83rd Street, Kansas City, Missouri and owned by Keithel Harris, and

Second, that defendant did so for the purpose of committing the crime of stealing therein, and

1. It must be noted that appellant failed to comply with Rule 84.04, requiring questioned instruction to be set forth in briefs, but this court nonetheless takes up the question and disposes of it on this appeal.

Third, that while in immediate flight from the inhabitable structure, the defendant was armed with a deadly weapon, then you will find the defendant guilty under Count I of burglary in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Stealing. A person commits the crime of stealing if he appropriates property or services of another with the purpose of depriving him thereof, either without his consent or by means of deceit or coercion.

If you find the defendant guilty under Count I of burglary in the first degree, you will assess and declare the punishment at imprisonment for a term of years fixed by you but not less than five years and not to exceed fifteen years.
MAI–CR 23.50—By the State"

█ Appellant's argument, simply put, misstates the law involving burglary in the first degree. It is appellant's contention that to be guilty of this offense, it must be proven that the accused unlawfully *entered* the premises and at the time of *entry*, was armed with a deadly weapon. Mere reading of the statute dispels appellant's argument, but further comments to the 1973 Proposed Code state, ". . . the conduct specified in Section 569.160, subsections 1(1) or (2) must occur while effecting entry, while inside, or during immediate flight in order to be sufficient for the offense of burglary in the first degree. The section makes it clear that immediate flight is part of the crime for these purposes."

Put another way, this statute provides that a burglar, to be charged with this offense, must be armed *either* upon entry, *or* while inside the structure, *or* in immediate flight therefrom. Appellant's argument that entry and being armed must coincide is an erroneous assumption under the statute.

█ The information herein charges appellant with unlawful entry for the purposes of committing a felony, to wit, steal-ing and being armed with a deadly weapon. The information does not specify the exact point in time appellant was armed. What remains of appellant's argument on this point in reality is whether the information sufficiently charged appellant with the offense of burglary in the first degree.

Under Rule 24.01 and the authority interpreting this rule, and information must state "essential facts constituting the offense charged" so as to inform an accused of the nature and cause of the accusation against him in such manner that he may prepare a defense to such accusation and again may never be retried for the same act, see *State v. Jenkins*, 494 S.W.2d 14 (Mo.1973); *State v. Shivers*, 458 S.W.2d 312 (Mo.1970); *State v. Frankum*, 425 S.W.2d 183 (Mo.1968) and *State v. Hoelting*, 562 S.W.2d 703 (Mo.App.1978).

The information in the instant case specifically charges appellant with breaking and entering ("knowingly entered unlawfully") and with an intent to commit a felony of stealing ("for the purpose of committing the crime of stealing therein . . ."), see *State v. Carter*, 541 S.W.2d 692 (Mo.App.1976). The information further outlines the aggravating factor which distinguishes burglary in the first degree, to wit, the "defendant was armed with a deadly weapon."

The information herein is drawn with sufficient specificity to apprise appellant with the charges against him, it is not misleading and provides appellant the opportunity to prepare a defense. Moreover, the information is drawn with sufficient specificity to prevent appellant's retrial upon the same charges, see *State v. Jenkins, State v. Shivers, State v. Frankum* and *State v. Hoelting, supra* and Rule 24.01.

█ As a further note, had appellant wished to have been notified of greater specificity, he could have, pursuant to Rule 24.03, moved for a bill of particulars. In so moving, appellant could have been notified as to *when* he was allegedly armed. Appellant's failure to ask for a bill of particulars constituted a waiver to challenge the infor-

mation on this point, see *State v. Jenkins* and *State v. Frankum, supra.*

A final note in passing concerning appellant's first alleged error, the possible lack of circumstantial evidence to prove appellant was ever personally armed, is resolved by the application of the principle that an accused may be charged and convicted even though he does not personally commit all necessary elements. In other words, he is liable for the action of his co-participants, see *State v. Young*, 490 S.W.2d 28 (Mo.1973) and *State v. Reed*, 453 S.W.2d 946 (Mo.1970).

In the instant case, appellant was observed gaining entry to the burglarized residence. Appellant's co-participant was observed leaving the burglarized residence with a blanket covering the guns. Multiple footprints in the snow, which were a short distance from where appellant and his co-participant dropped the fruits of their crime, separated into two separate and distinct paths and each led directly to the physical location of appellant and his co-participant, who were in separate locations. The stolen guns were kept unloaded in the owner's residence, but when the guns were removed to the local police station, at least one of the weapons was loaded. In fact, the officers had difficulty with unloading this weapon. The foregoing evidence was uncontroverted.

The evidence placed appellant in the burglarized premises. The evidence (footprints) traced appellant's departure from the burglarized residence to the exact spot of his arrest. The evidence revealed the theft of guns, one of which was loaded.

Under the misinterpretation by appellant of the statute, along with the evidence herein, appellant's point one is ruled against him.

Turning to appellant's second alleged error, it must be pointed out that Instruction no. 6 is the approved instruction MAI–CR 23.50. Appellant erroneously assumes, just as he did in the first point of error, that the information alleges he *entered* the residence armed with a deadly weapon. He

then objected to the questioned instruction, which charged him with being armed while in immediate flight.

There is no necessity to restate the evidence or the reasons for appellant's incorrect assessment of the information because that has been done above.

The entirety of appellant's second alleged error rests upon the question of whether or not there is a fatal defect between the information and the instruction.

An instruction must require the jury to find every fact necessary to constitute the essential elements of the offense charged, see *State v. Lane*, 551 S.W.2d 900 (Mo.App. 1977); and "where a crime may be committed by any of several methods, the information must charge one or more of the methods and the methods submitted in the verdict directing instruction must be among those alleged in the information," see *State v. Shepard*, 442 S.W.2d 58 (Mo. banc 1969), but a variance between an instruction and the information is fatal only where a new and distinct offense is submitted to the jury than what the accused was charged, see *State v. White*, 431 S.W.2d 182 (Mo.1968).

In the instant case, the information charged appellant with the offense of burglary in the first degree. The instruction questioned submitted the same essential elements. The offense committed could have been committed by being armed upon entry, during occupancy or during immediate flight. The instruction narrowed the charge against appellant to immediate flight so as to require a finding that appellant was armed during immediate flight. The instruction did not vary from the information, it was supported by the evidence and hence, by virtue thereof, was not rendered defective.

Point two is ruled against appellant.

The judgment, for the reasons set forth herein, is in all respects affirmed.

All concur.