STATE of Missouri, Respondent,

v.

Glenn ROBINSON, Appellant.

No. 62730.

Supreme Court of Missouri,
En Banc.

Nov. 9, 1982.

Rehearing Denied Dec. 3, 1982.

Stephen J. Murphy, Affton, for appellant.

John Ashcroft, Atty. Gen., Douglas Lind, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant appeals from his conviction by a jury of capital murder, § 565.001, RSMo 1978, and sentence to life imprisonment without eligibility for probation or parole for at least fifty years, § 565.008(1), RSMo 1978. This Court has jurisdiction. Mo. Const. art. V, § 3. We affirm.

The sufficiency of evidence is not questioned. The jury could have concluded the following facts beyond a reasonable doubt. At approximately 9 or 9:30 p.m. on August 16, 1979, Thomas and Carol Laman and their infant son went to bed in their single bedroom, upper-story flat. Thomas worked at night and generally left home around 11:45 p.m. On this night, the alarm rang at approximately 11:20 p.m., and Thomas arose at 11:30 p.m., dressed himself, kissed his wife good-bye, and went out into the hallway. He apparently turned on the hallway light, and Carol heard him yell, "What are you doing up here?" Carol testified that she heard a black male's voice reply, "We're just looking at your bikes." She then heard someone ask where she was, and her husband answered, "She's asleep in the bedroom."

Upon hearing these remarks, Carol arose and put on a blouse. Meanwhile, a man Carol later identified as appellant entered the bedroom with a gun. The bedroom was partially lighted by the hall light and by a night light, and Carol was able to observe the man's face from arm's length for two or three seconds before the man told her to turn away from him. After Carol turned away, the man made sexual advances toward her. At some point, she was able to observe his face a second time for two or three seconds. While the first man was with her, she heard a gunshot from the hall, but she heard Thomas speak in a normal voice afterwards.

After about five minutes, a second man entered the bedroom with a pistol and a can of beer, and the first man went into the hallway, where Thomas had remained. The second man put the gun to Carol's head and threatened to "blow [her] head off" if she did not give him her purse. When she was unable to comply, he grabbed her hair and demanded that she perform oral sex. While this was taking place, a second shot was fired in the hallway, and the man with Carol then left her.

When the second man entered the hallway, Carol heard someone ask, "What did you pop him for?" She shut the door as ordered and heard the two men apparently disconnecting the telephone. Within forty-five seconds after the second shot, Carol heard a third shot. She heard the men leave, left the bedroom, and saw two men running down the street. Her screams brought the police within two or three minutes. Thomas bled to death and was pronounced dead upon arrival at the hospital. He had been shot in the chest and the lower back. The former wound was superficial, the bullet traveling through, and lodging itself, in the muscles outside the chest cavity. The evidence showed that the latter wound was fatal and might have been received while the victim was lying face down. Other testimony at trial tended to place appellant near the scene on August 16, 1979.

## I

Appellant contends that the trial court erred in giving instructions 5, 7, 8, and 9, which are combinations of MAI–CR2d 2.12 and MAI–CR2d 15.02, 15.12, 15.14, and 15.-18, respectively. We here recite only Instruction No. 5 because it is substantially similar to the others in those features that appellant challenges and because appellant was convicted under Instruction No. 5, which is a combination of MAI–CR2d 2.12 and MAI–CR2d 15.02:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 16, 1979, in the City of St. Louis, State of Missouri, the defendant, or a certain person with the aid or attempted aid of the defendant, committed the offense of capital murder of Thomas Laman, in that

the defendant, or a certain person with the aid or attempted aid of the defendant, caused the death of Thomas Laman by shooting him, and that

the defendant, or a certain person with the aid or attempted aid of the defendant, intended to take the life of Thomas Laman, and that

the defendant, or a certain person with the aid or attempted aid of the defendant, knew he was practically certain to cause the death of Thomas Laman, and that

the defendant, or a certain person with the aid or attempted aid of the defendant, considered taking the life of Thomas Laman and reflected upon this matter coolly and fully before doing so, and

Second, that the defendant either before or during the commission of the offense of capital murder with the purpose of promoting its commission aided such other person in committing that offense,

then you will find the defendant guilty of capital murder.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Appellant contends (1) that in combining MAI–CR2d 2.12 with the MAI–CR2d 15.00 series, the trial court violated Rule 28.02(c), which mandates that applicable MAI–CR instructions be given to the exclusion of any other on the same subject, (2) that the trial court violated MAI–CR2d 2.12 n. 5 by failing to give a separate instruction defining capital murder, first degree murder, second degree murder, and manslaughter, and (3) that the instructions were ambiguous and inaccurately stated the law.

■ This Court recently addressed the first two issues in *State v. McIlvoy,* 629 S.W.2d 333, 336–37 (Mo. banc 1982). There we held that a trial court does not err in combining MAI–CR2d 15.02 and MAI–CR2d 2.12 in order to satisfy the following MAI–CR2d requirements: (1) that MAI–CR2d 2.12 be given, whether requested or not, whenever there is evidence that the defendant acted with others in planning, committing, or attempting to commit the offense, MAI–CR2d 2.10 n. 3; (2) that verdict directors contain all essential elements of the offense charged, MAI–CR2d 2.02 n. 2; (3) that the offense initially contemplated be identified without stating all of its essential elements, MAI–CR2d 2.12; and (4) that a separate instruction defining the offense initially contemplated be given whenever MAI–CR2d 2.12 is used, MAI–CR2d 2.12 n. 5. We find that a combination of MAI–CR2d 2.12 and MAI–CR2d 15.02 did not violate Rule 28.02(c) or MAI–CR2d 2.12 n. 5 because the evidence supported an instruction on capital murder and a finding that appellant had acted with another.

■ In reviewing whether the instructions stated the law accurately, we have taken cognizance of our order of April 30, 1982, effective January 1, 1983.[1] Therein at MAI–CR2d 2.12 n. 7 we have indicated that the instructions given on capital murder and party responsibility in *State v. White,* 622 S.W.2d 939, 942–43 (Mo. banc 1981), were not inconsistent with the instructions to become effective January 1, 1983.[2] The

---

1. The order is published in the Southwestern Reporter, Missouri Cases at 630–631 S.W.2d xxvii (1982).

2. The instruction given in *State v. White* was as follows:

If you find and believe from the evidence beyond a reasonable doubt.

First, that on the 5th day of February, 1979, Hardy Bivens with the aid or attempted aid of the defendant committed the crime of capital murder of Susie Hawkins, in that Hardy Bivens, with the aid or attempted aid of

instructions to become effective January 1, 1983, correctly state the law. We here find that the instructions given in the case at bar were substantially similar to those approved in *State v. White,* and, thus, were neither inaccurate nor ambiguous.

## II

Appellant next contends that the trial court erred in overruling his objections to the prosecutor's closing argument because, he argues, the argument referred to his failure to testify. He points our attention to the following statements:

"After the state's evidence which told you that he was there, that Glenn Robinson was there and committed murder, the defense had the opportunity to put on any evidence they wanted to and all they did was introduce two photos. The evidence is overwhelming and uncontradicted."

Continuing, the prosecutor argued: "They had the opportunity and are allowed to put on any evidence they want. The state's evidence—we went forward . . . The evidence is uncontradicted. And the evidence points to one thing, that Glenn Robinson is the man that murdered Thomas Laman."

In his rebuttal, the prosecutor attempted to explain his chief witness's difficulty in identifying a voice: "And she said she's never heard the voice since that time. Well, that could have easily been solved, not by me—."

Finally, the prosecutor argued: "And the only evidence in this case from the witness stand is evidence that says Glenn Robinson is a murderer—that he murdered Tom Laman—and that was uncontradicted."

The trial court has wide discretion in controlling the scope of closing argument. *State v. Shaw,* 636 S.W.2d 667, 675 (Mo. banc 1982). It is in a better position to observe the contested incidents and to determine their prejudicial effect upon a jury. *State v. Raspberry,* 452 S.W.2d 169, 173 (Mo.1970). Because of the trial court's superior vantage point, this Court has held that it will disturb the trial court's decision, when the prosecutor allegedly has alluded to a defendant's failure to testify, only where the references are *direct* and *certain.* *State v. Hutchinson,* 458 S.W.2d 553, 555 (Mo.1970). Merely stating that evidence is "uncontradicted" or that a defendant has failed to offer evidence is not a direct and certain reference. *See State v. Jones,* 491 S.W.2d 271, 274 (Mo.1973); *State v. Morgan,* 444 S.W.2d 490, 493 (Mo.1969).

Our review of the whole record does not reveal that the trial court abused its discretion. The burden of proof was a theme in the closing arguments of both counsel. Appellant repeatedly commented upon the quantity and quality of the state's evidence. Appellant argued extensively the state's witness's difficulty with voice identification, and it was appellant who first argued the state's failure to introduce evidence related to that issue, evidence equally accessible to appellant. The trial court could well have determined that the state's arguments all responded to appellant's arguments and that they did not directly and certainly refer to appellant's failure to testify.

## III

Appellant argues that the trial court erred in overruling his objection that the prosecutor had personalized his argument

the defendant caused the death of Susie Hawkins by shooting her, and in that Hardy Bivens, with the aid or attempted aid of the defendant knew he was practically certain to cause the death of Susie Hawkins, and in that Hardy Bivens with the aid or attempted aid of the defendant considered taking the life of Susie Hawkins and reflected upon this matter coolly and fully before doing so, and Second, that the defendant either before or during the commission of the offense of capital murder with the purpose of promoting its commission aided Hardy Bivens in committing that offense,
then you will find the defendant guilty of capital murder.
However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing propositions, you must find the defendant not guilty of that offense.
622 S.W.2d at 642–43.

by stating that if the jury rendered a verdict of not guilty, appellant would walk out of the courtroom and into the jury's community.

■ Appellant has mischaracterized the nature of the argument. Far from personalizing his argument, the prosecutor was attempting to clarify the significance of a single not guilty verdict form in an instructional packet that contained several verdict directors. Appellant had argued extensively to the court, in the hearing of the jury, that the jury could acquit him of capital murder and still be "hung" on the issue of guilt on the lesser included offenses. The record clearly shows that the prosecutor's declaration that a verdict of not guilty would allow appellant to walk out of the court and into the community was a specific response to appellant's argument to the contrary and was not an attempt to personalize the argument.

## IV

Appellant argues that the trial court erred in refusing to suppress Carol Laman's identification testimony because the identification procedures were impermissibly suggestive and were unreliable. He contends, specifically, that the in-court identification was corrupted and unreliable because Carol was permitted to view a line-up in which appellant appeared as the only participant whose photograph she had selected in an earlier photograph line-up; and because appellant was the only person in the line-up who was not wearing a shirt.

■ The linchpin of due process in identification questions is reliability, rather than suggestiveness. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Where an in-court identification is reliable, it will not be invalidated because out-of-court identification procedures are suggestive. *State v. Kirk,* 636 S.W.2d 952, 955 (Mo.1982). In determining reliability, the court looks at the "totality of the circumstances," including the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. *State v. Charles,* 612 S.W.2d 778, 780 (Mo. banc 1981).

We note before examining the facts that this Court has found in other cases that there was no improper suggestion when a witness positively identifies a defendant who was the only line-up participant whose picture had been shown to the witness, *State v. Charles,* and that a line-up does not require exact physical conformity of the particulars, *State v. Kirk.*

■ Our review of the record convinces us that the identification proceedings were not impermissibly suggestive and that the in-court identification was reliable. First, Carol Laman had ample opportunity to view the criminal at the time of the crime. He was with her in the bedroom for approximately five minutes, and she observed his face from an arm's length distance for a total of from four to six seconds. The record shows that the bedroom was illuminated by the hall light and a night light sufficiently bright that the couple had draped a blanket over the baby's crib so that he could sleep.

Second, we find that Carol Laman was sufficiently attentive. The intruder was pointing a pistol at her, and the record shows that he was simultaneously touching her sexually. Carol testified that during this encounter and immediately afterwards she made a conscious effort to remember the face of the man who had shot her husband.

Third, we find that the witness made no errors in description that indicate unreliability. Appellant alludes to an unspecified variance in Carol's testimony at the suppression hearing and her prior identifications. Although she was examined concerning some discrepancy about appellant's height and the intruder's height and about the intruder's hat, nothing in the record demonstrates an inaccurate description of the murderer's height or clothing. The rec-

ord suggests that appellant has significant scars on his head and arms, but Carol stated that the intruder had pulled his hat over the location of the head scar, and a failure to observe or describe the arm scars is not an inaccuracy of description.

Fourth, we find that Carol Laman was sufficiently positive in her identification. Her deliberation and momentary reluctance to state her identification even as she shook with recognition are indicia that the identification was careful and reasoned. In a show-up on the night of the murder, Carol stated that neither of two men that the police brought to her was the murderer. A week later she selected six photographs from a group of fifty to sixty and immediately discarded two. She was careful then to say that the remaining four men depicted were similar to the intruder but she reserved a positive identification. Within a week after the photographic identification, Carol observed three line-ups. Appellant, whose photograph had been selected, was in the third. The record indicates that perhaps another whose photograph had been selected was in another line-up. We note that the witness stated that she was a former Sister, placed a high value on human life and wished to make a correct identification. Our review of the record reveals that her hesitation to identify appellant, followed by a positive identification, indicates great care and deliberation, not uncertainty.

Finally, a period of two weeks between the murder and the confrontation with appellant raises no inference of unreliability. Appellant's allegation is without merit.

The judgment is affirmed.

DONNELLY, C.J., and RENDLEN, SEILER and HIGGINS, JJ., concur.

MORGAN, Senior Judge, concurs.

GUNN and BILLINGS, JJ., not participating because not members of the Court when cause was submitted.