STATE of Missouri, Respondent,

v.

James K. BETTS, Appellant.

No. 62851.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant-appellant was convicted of capital murder and sentenced to life imprisonment without possibility of probation or parole for 50 years, the state having waived the death penalty.

The defendant and two others, Dennis Skillcorn and Frank Brooks, planned to burglarize the farm home of Wendell Howell. During the course of the burglary Mr. Howell was killed by a shotgun blast to the head as he lay face down on a couch. Conflicting evidence was introduced as to who shot the victim. Frank Brooks testified for the state that the defendant had announced before the burglary that he would have to kill anyone found in the house, and that defendant was the one, in fact, who had fired the fatal shot. Defendant related that it was over his protestations that Mr. Howell died at the hand of Frank Brooks, although he acknowledged that if anyone was encountered in the house, the resident would have to be "cowboyed," *i.e.*, frightened out of his wits.

The crime was committed on December 2, 1979, and the case tried in October 1980. The jury was instructed on capital murder,

second degree murder and manslaughter but was not instructed on § 565.003, RSMo 1978, first degree murder committed in the perpetration of burglary. Initially, the cause was reversed for failing to instruct on first degree murder. But on this Court's own motion, the submission was set aside for rehearing.

The case presents a multitude of issues: (1) whether first degree felony murder is a lesser included offense of charged capital murder, requiring instruction; (2) the question of instructional error regarding the requisite mental state for conviction of capital murder; (3) whether there was prejudicial error in a deviation from MAI–CR2d 2.12, the aider and abettor instruction; (4) alleged error in failing to define "inhabitable structure"; (5) alleged error in overruling a challenge to a venireman; (6) the effect of including the "however" clause in the state's verdict directing instruction when an affirmative defense is submitted; (7) whether the instruction on defense by reason of abandonment was prejudicially erroneous.

We affirm the judgment of conviction.

## I.

■ The first point—whether first degree felony murder is a lesser included offense of capital murder, requiring instruction calls for summary disposition. *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982), and to the same effect *State v. Woods,* 639 S.W.2d 818 (Mo.1982), and *State v. Blair,* 638 S.W.2d 739 (Mo. banc 1982), speak directly to that point holding that first degree felony murder, § 556.046, RSMo 1978, is not a lesser included offense of capital murder. Further, it is the holding of these cases that no first degree murder instruction is required in a trial for capital murder committed after January 1, 1979. *Baker* was in effect at the time of trial.

## II.

The next point centers on the state's verdict director for capital murder as not properly instructing on the requisite mental state. That instruction provides:

INSTRUCTION NO. 8

If you find and believe from the evidence beyond a reasonable doubt:

First, that on December 2, 1979, Dennis Skillcorn and Frank Brooks with the aid or attempted aid of defendant committed the offense of burglary of the Wendell Howell home, and

Second, that the defendant, either before or during the commission of the offense of burglary with the purpose of promoting its commission, aided such other persons in committing that offense, and

Third, that on December 2, 1979 in the County of Jackson, State of Missouri, the defendant or another caused the death of Wendell Howell by shooting him, and

Fourth, that the defendant or another intended to take the life of Wendell Howell, and

Fifth, that the defendant or another knew that he was practically certain to cause the death of Wendell Howell, and

Sixth, that the defendant or another considered taking the life of Wendell Howell and reflected upon this matter coolly and fully before doing so, and

Seventh, that such offense was committed by the defendant or such other persons to promote escape or to prevent detection for the offense of burglary, and

Eighth, that the defendant committed or knew such other persons were practically certain to commit such additional offense,

then you will find the defendant guilty of capital murder, unless you find and believe from the evidence that it is more probably true than not true that the defendant is not entitled to an acquittal by reason of Instruction No. 6.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

It is defendant's contention in this regard that the foregoing verdict director does not

hypothesize the requisite intent as it attributes the intent alternatively to defendant, Skillcorn or Brooks; that the deficiency is not cured in Paragraph Second because the mental state hypothesized there relates to burglary and not capital murder; and that Paragraph Eighth alone is an inadequate direction for the mental state in capital murder.

The verdict director in this case follows the pattern given and approved in *State v. Robinson*, 641 S.W.2d 423, 425 (Mo. banc 1982) and *State v. White*, 622 S.W.2d 939, 942–43 (Mo. banc 1981), *cert. denied*, 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). The only difference between the verdict directors in *Robinson* and *White* and this case is that in the former two cases the instructions hypothesized guilt on the theory that the defendant had aided and abetted another in the actual act of killing, whereas in this case the instruction hypothesized guilt on the theory that the defendant had aided and abetted another in a burglary as an initially contemplated offense, that a capital murder occurred as the legally proximate result of the burglary and that defendant knew another was practically certain to commit a capital murder. That difference, however, is inconsequential. *Robinson* and *White* determined that knowing another is practically certain to commit capital murder is a sufficient mental state to satisfy the *mens rea* requirements of a capital murder.

■ In the critical aspects of the *mens rea,* the jury in this case was instructed the same as in *White:* if the defendant knew others were practically certain to commit a capital murder in the course of conduct for which he was criminally responsible, *i.e.,* burglary, then he had the same intent as the active participant, including knowledge, premeditation and deliberation. To know that another is practically certain to commit a capital murder is to know what that person will do and with what intent he will do it. With this knowledge, to purposely promote the commission of an offense that results in a capital murder is to possess the requisite intent. In this case all parties knew that a burglary was to be committed; and according to Brooks, defendant said that if anyone was in the house, that person would have to be killed. Finally, either Brooks or the defendant carried out the plan. Thus, defendant participated in the promotion of an offense (burglary) with evidence before the jury, though denied by defendant, that he knew fully that someone would be killed either by his own hand or by a co-participant. Evidence of the requisite intent to convict defendant of capital murder was therefore, present.

### III.

Defendant argues error in the verdict director's use of the phrase "then you *will* find the defendant guilty," rather than "then you *may* find the defendant guilty."

■ It was error to use the word "will" rather than "may", because criminal responsibility in this case depends upon party liability and because § 562.051, RSMo 1978, applies. This statute states: "[W]hen two or more persons are criminally responsible for an offense which is divided into degrees each person is guilty of such degree as is compatible with his own mental state...." MAI–CR2d 2.12 is the vehicle for instructing on party liability, and Note 3 on Use thereto states that "the word 'may' must be used ... in any case where section 562.051 is applicable."[1] Additionally, MAI–CR2d 2.14 must be given whenever § 562.051, RSMo 1978, applies.

Although error occurred, for the reason expressed in *State v. White*, 622 S.W.2d at 943–44, it was not prejudicial because the jury was otherwise adequately instructed that defendant's liability for each degree

---

1. *But see State v. McIlvoy*, 629 S.W.2d 333, 338 (Mo. banc 1982), holding that no error results in using *will* where a person is charged with a crime entirely on the basis of his own conduct and mental state even though another aided him; and *State v. Boggs*, 634 S.W.2d 447, 455 (Mo. banc 1982), holding that no error occurs in using *will* in an instruction on first degree murder because no culpable mental state vis-a-vis the killing is required in first degree murder and section 562.051, RSMo 1978, therefore, does not apply.

could be considered. In this case, as in *White,* the jury was properly instructed on all applicable degrees of homicide and given MAI–CR2d 2.14, instructing it to find guilt only to the degree compatible with mental state.

#### IV.

Defendant contends that the trial court erred in failing to define "inhabitable structure" in connection with the verdict director holding him responsible for capital murder arising during the course of burglary with others. Note 5 on Use to MAI–CR2d 2.12 requires that when the 2.12 aider and abettor instruction is used, a separate instruction must be given defining the initial offense contemplated (in this case, burglary). So, too, a definition must be given to any word which must be defined according to Notes on Use under any MAI–CR form applicable to that offense.

▮ In this case, the jury was instructed on second degree burglary pursuant to MAI–CR2d 33.01. Note 3 on Use to MAI–CR2d 23.52 on burglary in the second degree mandates that "inhabitable structure" be defined. Therefore, error occurred in failing to define this term. The error, however, was not prejudicial. Rule 28.02(e).

▮ The failure to define "inhabitable structure" is deemed prejudicial unless a contrary effect is shown, and verdict directing instructions must contain each element of an offense charged. The language of an instruction is the basis for determining whether it includes the necessary elements, and failure to define language of common usage that would not confuse the jury does not constitute prejudice. Finally, prejudicial error occurs where a jury "may have been adversely influenced by an erroneous instruction or by the lack of an instruction required by statute." *State v. Rodgers,* 641 S.W.2d 83, 85 (Mo. banc 1982) (Citations omitted).

The jury instructions contained a definition of burglary and, in particular, the requirement that the jury find that the offense was committed in an inhabitable structure. Thus, the instruction contained this element of the crime charged. Inquiry, then, is limited to whether the term "inhabitable structure" was a term of common usage in view of the evidence of this particular case.[2]

In this instance, the burglary and, ultimately, the killing occurred in a house. There was no question that Wendell Howell's house was a structure in which he lived and, thus, was an inhabitable structure. Section 569.010(2), RSMo 1978. And it is readily apparent that where the evidence pointed to a house actually inhabited at the time of the incident, the meaning of "inhabitable structure" was common and readily understood. Hence, as in *State v. Rodgers, supra,* it is clear that the jury could not have been adversely influenced by the failure to define the term "inhabitable structure," and that no prejudicial error occurred.

#### V.

Defendant next contends that the court erred in denying his challenge of a venireperson for cause after she had stated that she would follow God's law if it appeared to her that it conflicted with the court's instructions.

▮ First, a brief recital of guideposts to follow with respect to this point: In determining qualifications of a prospective juror, the trial court has very wide discretion, and its ruling will not be disturbed on appeal unless there has been a clear abuse of discretion. *State v. Payne,* 639 S.W.2d 597, 599 (Mo. banc 1982). An appellate court will interfere with the exercise of that discretion only when the record shows a manifest abuse of that discretion and a real probability of injury to the complaining party. *State v. Pennington,* 642 S.W.2d 646, 649 (Mo. banc 1982); *State v. Scott,* 515 S.W.2d 524, 527 (Mo.1974); *State v. Reed,* 629 S.W.2d 424, 426 (Mo.App.1982). A jury

---

**2.** Words of common usage and general understanding generally do not require definitional instruction. *State v. Northcutt,* 598 S.W.2d 130, 133 (Mo. banc 1980).

must have open minds and be freely able to follow the law as declared by the trial court. *State v. Brown,* 547 S.W.2d 797, 799 (Mo.1977). But religious affiliations do not constitute qualification or disqualification for jury service. *Rose v. Sheedy,* 345 Mo. 610, 134 S.W.2d 18, 19 (1940). And whatever personal opinions a juror has about the merits of the law are immaterial except when they are so unyielding as to preclude a juror from following the court's instructions. *State v. Pennington, supra; State v. Daugherty,* 631 S.W.2d 637, 643–44 (Mo. 1982); *State v. Haynes,* 482 S.W.2d 444, 447 (Mo.1972); *see also State v. Stokes,* 638 S.W.2d 715, 722 (Mo. banc 1982) (defendant does not have a right to a jury indicating an inability to follow the law regarding imposition of death penalty.)

 An oath, generally, is an appeal by a person to God, the rewarder of truth and avenger of falsehood. 67 C.J.S. *Oaths & Affirmations* § 2 (1978). And before proceeding with trial in a criminal case, the jury must be duly sworn. Section 546.060, RSMo 1978. It is also an accepted fact that the oath taken by the prospective jurors ends with the "so help me God" phrase. Thus, courts evince no incompatibility between God and the law, and if such exists, none was developed on the record during the empanelment procedures by either the state or defense. The record reveals no possibility of prejudice to the defendant by the trial court's refusal to strike this particular venireperson for cause.

### VI.

Defendant asserts that the trial court erred in including the general converse instruction in the verdict director when it also instructed the jury on the affirmative defense of abandonment.

 The jury was instructed on the defense of abandonment. Note 4 on Use to MAI–CR2d 2.12 states that when the af-

firmative defense of abandonment is instructed upon, the general converse beginning with "however" must be omitted. See also Note 2 on Use to MAI–CR2d 2.04. It was, therefore, error to add the general converse to the verdict director. Nevertheless, no prejudicial error resulted, for the instruction given was neither a misstatement of the law nor could it have confused the jury.

Defendant argues that his only defense was abandonment, but that in this case the jury had placed before it the general acquittal language of the "however" provision [3] and a separate abandonment instruction. Thus, says the defendant, the jury was misled because it was instructed on two theories of innocence while he had argued only one theory.

The instruction given, however, followed closely defendant's theory of defense, for throughout the trial and notably so in closing argument, defendant's counsel sought to convince the jury that the state had failed in its burden to prove capital murder, rather than emphasizing only the affirmative defense of abandonment.[4] As a consequence, the instructions taken together fully fulfilled their purpose of informing the jury of defendant's defense and all aspects of the case. *State v. Grady,* 577 S.W.2d 930, 932 (Mo.App.1979); *State v. Twiggs,* 553 S.W.2d 69, 71 (Mo.App.1977). *See also State v. Boggs,* 634 S.W.2d 447, 455 (Mo. banc 1982), holding that failure to instruct as required is not prejudicial error when the jury is apprised of all available options of defendant's defense. Defendant's defense in this case included both general innocence and abandonment; hence, there was no error in instructing on both.

### VII.

 Defendant's final parry is also directed at the MAI–CR2d 2.16 abandonment instruction which recites:

---

3. "However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions [elements for capital murder], you must find the defendant not guilty of that offense."

4. Section 562.041.2(3) and .3 establish the affirmative defense of abandonment.

If you find and believe from the evidence beyond a reasonable doubt that the defendant engaged in the conduct submitted in Instruction Nos. 8 [capital murder], 10, and 12, and

If you further find that it is more probably true than not true that before the commission of the offense of capital murder, murder second degree or manslaughter as submitted in Instruction Nos. 8, 10, and 12, the defendant abandoned his purpose to promote the commission of that offense and gave timely warning to law enforcement officers or otherwise made proper effort to prevent the commission of the offense, you must find the defendant not guilty of that offense.

He argues that the instruction is internally inconsistent and misstates the law. His contention is that prior to the jury's reaching the abandonment issue, there must be an illogical finding of guilt of capital murder, the charge for which he asserts innocence by reason of abandonment. But that is not so. It is clear under § 562.041, RSMo 1978, and we so hold, that the defense of abandonment may be successfully raised on the basis that the defendant may abandon the offense before another perfects it. And, too, a defendant with requisite intent to commit a crime who has performed all the acts necessary to culpability may win acquittal if he abandons his nefarious pursuit before another completes it. The instruction properly directed the jury in this regard and did not misstate the law.

Judgment affirmed.

RENDLEN, C.J., HIGGINS, J. and HENLEY, Senior Judge, concur.

DONNELLY, J., dissents.

SEILER, Senior Judge, dissents in separate opinion filed.

WELLIVER, J., dissents and concurs in separate dissenting opinion of SEILER, Senior Judge.

BLACKMAR and BILLINGS, JJ., not participating because not members of the Court when cause was submitted.

SEILER, Senior Judge, dissenting.

I respectfully dissent. My reasons are that I consider instruction no. 8, the instruction under which defendant was convicted of capital murder, prejudicially erroneous in two respects. First, under its wording the jury was authorized to convict defendant even if they believed defendant neither shot the victim nor proposed to kill anyone found in the house and tried, although ineffectually, to dissuade Brooks from killing decedent after defendant realized what Brooks was about to do. Second, instruction no. 8 contained a confusing conflict as to the burden of proof.

Of these in the order stated.

## I

The state charged defendant, tried him, and instructed the jury on the theory that he was guilty of capital murder no matter whether he or Brooks fired the weapon which killed the decedent, lying helpless and submissive on the couch. The testimony as to what took place at the Howell residence came from two of the participants. One was Frank Brooks, who testified for the state. The other was defendant, who testified for himself. The only other person who would have been able to shed any light on what took place throughout the sequence of events was the third participant, Dennis Skillcorn. Dennis Skillcorn, however, was not called as a witness by either side and did not testify before the jury.[1]

On Brooks' testimony the state, of course, made a case against defendant of capital murder. According to Brooks, defendant announced in advance his (defendant's) intention to kill anyone found in the house during the burglary and then proceeded to do so.

---

1. It appeared from testimony outside the presence of the jury that Skillcorn had earlier been

tried and convicted for the same murder and was sentenced to thirty-five years.

There were some practical problems with resting the state's case unequivocally upon the Brooks testimony. Brooks had made a deal with the state (as was made known to the jury) that in return for his testimony against defendant Brooks would receive a sentence of not more than twenty years on the pending charge against him of murder of the decedent. In addition, Brooks was also under charge of capital murder on another killing and part of the agreement was that on that charge also he would receive a sentence not in excess of twenty years and that the two sentences would run concurrently. Defendant, on the other hand, had no prior murders on his record.

The state tried the case throughout on the theory that defendant was guilty of capital murder no matter whether the jury believed it happened the way Brooks testified or whether it happened the way defendant testified. How the defendant said it happened will be set forth shortly. The prosecutor took up instruction no. 8 paragraph by paragraph in his argument to the jury. He first argued that the jury should accept Brooks' testimony, but then he argued that even if the jury believed defendant's testimony that it was Brooks, not defendant, who fired the shot that nevertheless defendant was guilty of capital murder; that even under defendant's own testimony he was guilty of capital murder under instruction 8 because he knew or was practically certain that Brooks was going to do it—i.e., shoot decedent.

What was defendant's testimony? Defendant testified that the three of them—Brooks, Skillcorn and defendant—planned to burglarize the Howell farmhouse. They originally intended to commit a burglary somewhere else in the Buckner or Levasy area. They first approached a trailer, but saw someone nearby so they left and went next to the Howell residence. Skillcorn knocked on the door and Howell answered

the knock. Skillcorn thereupon returned to the automobile and the three of them went down the road three or four miles, stopped and decided to "cowboy" the old man and his house (meaning, according to defendant, to rush in, grab what was in sight, and rush out).[2] Defendant insisted there was no discussion about hurting or killing anyone and that he owned no gun. Defendant testified they drove back to the Howell farmhouse, parked the car and walked up to the house. According to defendant's testimony this is what then occurred: Brooks (who was twenty-two years of age, a large man, weighing 235 pounds and six feet two inches in height) entered the house first and when defendant came in Mr. Howell was lying on the couch. Defendant removed Howell's glasses and told him to turn his head to the inside of the couch, which he did. Defendant watched the old man and made sure no one was driving up to the house while Brooks and Skillcorn searched the various rooms and drawers. As they were leaving with what they had stolen (television set, jewelry, cash, sirloin steaks), Brooks said he (Brooks) ought to kill the old man. Defendant told Brooks that they were all wearing gloves, and the old man did not have his glasses and had not turned around to look at them. Defendant testified he thought he had talked Brooks out of hurting the old man. Brooks, nevertheless, pulled the shotgun out from under his belt and shot the victim. Defendant did not have a gun and had not seen the shotgun until Brooks pulled it out of his trousers.[3] Defendant said Brooks left and defendant stood there for a minute or two to get over the "stun" and then he too left the house, got in behind the wheel of the car, and they departed.

Instruction no. 8 is not to be found in MAI–CR 2d. It therefore does not carry the MAI–CR 2d presumption of validity. It

---

2. The principal opinion defines "to cowboy" as meaning "to frighten out of one's wits." Neither what defendant said it meant nor what the principal opinion says it means equates to a declaration of intent or a plot to kill whoever was in the house.

3. The record is silent as to the ownership of the shotgun. It was found the day following the murder at the residence of one Everett Stanfield, where Brooks and Betts spent the night after the murder.

must, of course, declare the law and "require the jury to find every fact necessary to constitute the essential elements of the offense charged", *State v. Elbert,* 438 S.W.2d 164, 165 (Mo.1969), *State v. Singleton,* 602 S.W.2d 3, 8 (Mo.App.1980); rule 28.02. Capital murder, as we know, occurs when, but only when, a person "unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being", § 565.001, RSMo 1978.

What does instruction no. 8 tell a jury of laymen, trying to decide the facts and apply the law, as to what it takes for defendant to be guilty of capital murder?[4]

Paragraphs first and second of the above instruction refer to burglary of the Howell house and the aid by the defendant of Skillcorn and Brooks in the commission of burglary. These two paragraphs do not refer to capital murder, but deal with helping commit burglary.

Defendant, however, was not charged with burglary. Paragraphs first and second are unnecessary for and add nothing to what is required for a conviction of capital murder, although they would be pertinent for conviction of first degree murder.

The same is true of paragraph seventh. Committing the homicide for the purpose of escape or to avoid detection of the burglary would be appropriate for a conviction of first degree murder, as an offense committed in the perpetration of, or in the attempt to perpetrate, the burglary here involved. In fact, MAI–CR 2d 15.06—Murder in the First Degree in Burglary, contains the language under discussion as its paragraph second, to-wit: "Second, that the defendant did so to promote escape after committing or attempting to commit burglary at" (the described location). But, it is not an element of capital murder, which is what instruction no. 8 purports to cover.

Paragraphs third, fourth, fifth and sixth of instruction no. 8 address the jury in terms of "defendant or another" doing, intending, knowing, or considering certain acts or deeds. These submissions are all in the alternative, the disjunctive. We cannot determine from the general verdict of guilty[5] whether the jury, in convicting defendant of capital murder, determined that it was defendant or another who had the intent and did the shooting. These four paragraphs do not require, as a predicate to conviction, that the jury find the defendant himself held any of the intents mentioned or committed any of the acts described. The jury could have found, under the evidence, in applying the instruction that it was Brooks who intended and acted.

---

4. Instruction no. 8, for convenience, is repeated below:

 If you find and believe from the evidence beyond a reasonable doubt:
 First, that on December 2, 1979 Dennis Skillcorn and Frank Brooks with the aid or attempted aid of defendant committed the offense of burglary of the Wendell Howell home, and
 Second, that the defendant, either before or during the commission of the offense of burglary with the purpose of promoting its commission, aided such other persons in committing that offense, and
 Third, that on December 2, 1979 in the County of Jackson, State of Missouri, the defendant or another caused the death of Wendell Howell by shooting him, and
 Fourth, that the defendant or another intended to take the life of Wendell Howell, and
 Fifth, that the defendant or another knew that he was practically certain to cause the death of Wendell Howell, and
 Sixth, that the defendant or another considered taking the life of Wendell Howell and

 reflected upon this matter cooly and fully before doing so, and
 Seventh, that such offense was committed by the defendant or such other persons to promote escape or to prevent detection for the offense of burglary, and
 Eighth, that the defendant committed or knew such other persons were practically certain to commit such additional offense, then you will find the defendant guilty of capital murder, unless you find and believe from the evidence that it is more probably true than not true that the defendant is not entitled to an acquittal by reason of Instruction No. 6.
 However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

5. The verdict read: "We the jury find the defendant, James Betts, guilty of capital murder as submitted in instruction No. 8."

The final numbered paragraph, paragraph eighth, is also in the disjunctive: that "the defendant committed or knew such other persons were practically certain to commit such additional offense." Again, it cannot be determined from the verdict whether the jury found that defendant shot Howell or simply that he knew Brooks, at some unspecified juncture, was practically certain to do so.

Thus, instruction No. 8 permits the jury to find defendant guilty of capital murder if the jury finds the following:

1. That Skillcorn and Brooks, with defendant's aid, burglarized the Howell residence.

2. That defendant with the purpose of committing burglary aided Skillcorn and Brooks in doing so.

3. That Brooks shot Howell.

4. That Brooks intended to kill Howell.

5. That Brooks knew he was practically certain to kill Howell.

6. That Brooks considered taking Howell's life and reflected upon it coolly and fully before doing so.

7. That the offense was committed by Brooks to promote escape or prevent detection of the burglary.

8. That defendant knew Brooks was practically certain to kill Howell.

9. That defendant is not entitled to acquittal by reason of abandoning his purpose of committing capital murder and making a proper effort to prevent the homicide.

Nowhere is it required that the jury find there was an act or intent on defendant's part, other than with respect to the burglary. There was evidence before the jury to support items one through seven above as to Brooks' conduct, but these would not constitute capital murder on the part of defendant.

Item eight requires that defendant knew Brooks was practically certain to kill Howell. In the literal sense, when Brooks announced he was going to kill the old man, aimed the shotgun at the victim's head and then pulled the trigger, defendant did come to know that Brooks was practically certain to kill Howell. The inevitable end result was obvious. But surely this kind of knowledge, which would come to anyone who heard and saw what Brooks was doing, is not sufficient. Yet that is all the instruction requires. The instruction substantially enhances the possibility that even if the killing of Mr. Howell took place as defendant testified, that the jury would nevertheless find defendant guilty of capital murder. It is well established that mere presence at the scene of the crime is not sufficient to support a conviction, *State v. Arnold*, 566 S.W.2d 185, 189 (Mo. banc 1978); *State v. Allen*, 420 S.W.2d 330, 333 (Mo. 1967) and it would seem equally sound that merely becoming aware at the last moment of what Brooks was going to do is not sufficient to convict defendant of capital murder.

Under instruction no. 8, the jury could have accepted defendant's version that there was no more than a burglary planned, that it was Brook's idea, unexpressed until the men were about to depart, to do away with the victim, and that Brooks did the shooting despite defendant's efforts to dissuade him, yet find defendant guilty of capital murder.

We cannot declare or treat defendant's testimony unbelievable as a matter of law or declare that the jury should not believe defendant. That is a matter exclusively for the jury. If defendant were unarmed and intended to and did aid only in the burglary and stealing and if there were no plan in advance to kill the occupant of the house, and if Brooks had the shotgun and used it to shoot the deceased at point blank range, despite defendant's protests and without defendant doing anything to aid in the shooting, then defendant did not have the culpable mental intent required for capital murder and the culpable intent of Brooks to kill Howell cannot be transmitted or imputed to defendant under the above facts. If it could be, then what it takes to constitute capital murder for an accomplice would be less than what is required for the principal.

If the state intended to prosecute defendant in the alternative—to convict him of capital murder either as the principal or as one who helps another do the act—then the instruction must submit to the jury hypotheses which are supported by evidence and which, if found, establish that the defendant, if not acting as the principal, had the intent and purpose to kill required for capital murder. Alternate theories supporting conviction may be submitted so long as each theory is supported by evidence. *State v. Green,* 511 S.W.2d 867, 874 (Mo.1974); *State v. Hayes,* 572 S.W. 882, 885 (Mo.App.1978). Here, the jury, if they believed Brooks was the one who shot Howell, in order to convict defendant had only to find additionally under instruction no. 8 that defendant, at whatever time, knew Brooks was practically certain to kill Howell. This is not sufficient to make defendant guilty of capital murder under the circumstances of this case if Brooks did the shooting, which was one of the alternative theories submitted.

The principal opinion speaks of "a capital murder [which] occurred as the legally proximate result of the burglary", but it does not follow that because the homicide occurred as the result of the burglary that it is capital murder. If it were committed in the perpetration of the burglary, without a premeditated intent to cause the death of decedent, it would be first degree murder under § 565.003, RSMo 1978. It takes more than that to be capital murder.

The principal opinion states that "defendant knew another was practically certain to commit a capital murder", but this unqualified statement is too broad taken at its face value under the special circumstances of this case, as earlier pointed out. The principal opinion states that as to the critical mens re "if defendant knew others were practically certain to commit a capital murder in the course of conduct for which he was criminally responsible, *i.e.* burglary, then he had the same intent as the active participant, including knowledge, premeditation and deliberation. To know that another is practically certain to commit capital murder is to know what that person will do and with what intent he will do it. With

this knowledge, to purposely promote the commission of an offense that results in a capital murder is to possess the requisite intent." This means that if defendant promoted the burglary during which Brooks committed a capital murder, it follows that defendant is guilty of capital murder. This is not necessarily true. It depends on what defendant did in addition to promoting the burglary (although this would not be the case as to first degree murder). The principal opinion states that the defendant promoted the burglary though "he knew fully that someone would be killed either by his own hand or by a co-participant." Respectfully submitted, the evidence is in direct conflict on this vital point. According to Brooks, yes, but according to defendant there was no plan to kill in connection with the robbery and he did not know that anyone would be killed until just before Brooks did the deed, over defendant's protest.

The principal opinion takes the position that instruction no. 8 is good under *State v. Robinson,* 641 S.W.2d 423 (Mo. banc 1982) and *State v. White,* 622 S.W.2d 939 (Mo. banc 1981), cert. denied 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). I respectfully disagree. In Robinson, the capital murder instruction required much more to convict defendant, in event he was not the triggerman, than that he knew the other person was practically certain to commit a capital murder.

In *White,* the same is true. There the instruction repeatedly hypothesized that "Hardy Bivens with the aid or attempted aid of the defendant" did so and so. The instruction always required the jury to find that defendant aided Hardy Bivens in whatever the latter did. The guilty verdict had to mean under the instruction that the jury found defendant helped Bivens in all that Bivens did. That is not so under Instruction No. 8 and the verdict in the present case. Neither cited case, therefore, is a basis for upholding the instruction here.

II

The second problem with instruction no. 8 is that despite the explicit direction of note

4, MAI–CR2d 2.12, that when the affirmative defense of withdrawal is given (as it was in instruction no. 6 discussed below), then the usual general converse contained in the final paragraph of the verdict directing instruction must be omitted, it was not omitted here. Instead, it was included, which the principal opinion concedes was error. This error makes it impossible to consider instruction no. 8 without being confronted with the confusing contradiction between the last two paragraphs of the instruction as to what burden of proof it takes to convict.

The general converse which concludes instruction no. 8 required "each and all" of the propositions preceding it to be found "beyond a reasonable doubt" in order to convict; otherwise the jury must acquit.

However, the paragraph of no. 8 immediately preceding the general converse paragraph has a different burden of proof, one prescribed by statute, § 562.041.2(3), as it involves an affirmative defense. This paragraph tells the jury they will find defendant guilty of capital murder "unless you find and believe from the evidence that it is probably more true than not that defendant is not entitled to acquittal by reason of Instruction No. 6".[6] When we look at instruction no. 6, however, we find the burden of proof is there declared to be "If you further find that it is more probably true than not true", etc.

It is impossible to reconcile the two paragraphs on what is the burden of proof. One tells the jury what it takes to acquit using one standard of proof, while the other tells the jury what it takes to acquit using a different and lesser standard of proof. If the jury should believe defendant had met his burden on instruction no. 6, the jury was then told in the following paragraph of instruction no. 8 that in order to acquit defendant the jury must be guided by a higher standard of proof.

---

6. The quoted language is difficult to follow at best. It involves a clause starting with "unless", followed by two negatives. See fn. 4, supra. As said in State v. Minnis, 486 S.W.2d 280, 285 (Mo.1972),

It is apparent the drafters of MAI–CR2d realized the contradictory and confusing effect of using the "However" clause along with the affirmative defense, as seen by note 4, mentioned above. Their directive not to do so was ignored here. The jury was left with conflicting instructions on the burden of proof.

The principal opinion says the instruction could not have confused the jury, as the instructions taken together informed the jury of all aspects of the case, citing various cases stating the general proposition that instructions are to be read as a whole. However, none of the cited cases involved an instruction containing an expressly prohibited clause, in direct violation of MAI–CR2d, where, as here, the inclusion of the prohibited clause presented the jury with two conflicting burdens of proof. This could easily have been avoided by following the MAICR2d admonition. Where a defendant is faced with a capital murder charge, he is entitled to a correct instruction, particularly in the burden of proof area.

---

While a lawyer could, with some patience and difficulty, harmonize this ravel of contradictory directions, it is not to be expected of a jury of laymen.