STATE v. WILLIAM ERNEST USSERY, Appellant.—No. 40606.—208 S. W. (2d) 245.

Division One, February 9, 1948.

*Chas. A. Moon* for appellant.

*J. E. Taylor*, Attorney General, and *Gordon P. Weir*, Assistant Attorney General, for respondent.

[245] DOUGLAS, P. J.—Ussery was convicted of murder in the first degree and sentenced to life imprisonment.

While Ussery was employed as a janitor at a pool hall known as Whitey's Recreation Parlor in Springfield, he secretly had a duplicate key made for the entrance door which opens from the sidewalk into a stairway which leads upstairs to the pool room. Several days later, after midnight when the place was closed, he entered by means of his duplicate key. He tried to lock the door after he was inside but was unable to do so. He went upstairs into the pool room, took a screwdriver from a drawer in a cabinet, pried upon the door of the cabinet where money was kept, and took about $95 and a wrist watch. He was wiping the cabinet door to remove his finger prints when he heard the front door open. He hid under a bench.

Lee Garton, a deputy constable, employed as a member of the Merchant Patrol, accompanied by his brother Howard Garton also a deputy constable, was making his usual rounds trying the doors of the business houses which he protected. He found the door to the pool room unlocked and with his brother went upstairs to investigate. He found the drawer and the cabinet door open. He decided to telephone the proprietor, and drove away in his automobile [246] leaving his brother Howard on guard on the sidewalk at the front door. He was a block away when he heard a shot and his brother call out. He rushed back and found his brother had been critically wounded. His brother told him a man had come out of the pool hall with the lower part of his face covered and had shot him. Howard Garton died the following morning.

After the two men left the pool room and after hearing the front door close Ussery left his hiding place and looked out the front window. He saw the automobile leave, but observed a man on guard at the front door. He then went back to the cabinet for the pistol he knew was kept there. He tied his handkerchief about the lower part of his face and crept down the stairs, gun in hand. He quietly opened the entrance door and stepped out on the sidewalk in back of Howard Garton. He commanded: "Hold it! Put your hands up and turn around." He says Garton turned, was looking at him and had both hands on a pistol in a holster at his side. Believing Garton was trying to get his gun in a position to shoot him Ussery shot three times at Garton and knew he hit Garton because Garton cried out. Ussery fled. He ran into an alley, climbed to the top of a building where he hid the pistol, and hid the pocketbook he had taken from the pool room containing part of the money, keeping about $65 and the wrist watch. He climbed down from the roof, went a few blocks and threw the

duplicate key high in the air toward the roof of a building. He then hailed a taxicab, drove to the bus station and rode the bus to Chicago where he was picked up by police waiting for him at the bus station. He had the wrist watch and part of the money. He was taken before the Chief Justice of the Superior Court where he formally waived extradition and consented to return to Springfield.

While driving to Springfield he confessed to the two police officers who had come for him. At police headquarters in Springfield he signed a written confession. Then he guided the officers to the places where he had hidden the pistol and the money which they recovered. The pistol had three empty shells, three full ones. Then he took the officers to the place where he had thrown the key and they found it on the roof of the building. Upon his return to headquarters he signed another written statement describing his part in recovering these articles.

Able counsel were appointed to represent Ussery who pleaded not guilty, and filed a motion to suppress his confessions on the ground they were not voluntary but were obtained through threats of violence. After a preliminary hearing the court denied the motion and admitted evidence of the confessions before the jury with an instruction to the jury on the question whether or not they were voluntary.

Ussery took the stand, testified fully to all that occurred including the shooting of Garton, but claimed he shot Garton in self-defense "to keep from being shot."

Ussery offered an instruction on self defense which the court properly refused. The rule is well settled that the killing of an officer or other person attempting to make a lawful arrest ordinarily cannot be justified as in self defense. Ussery was in the act of committing a felony and he was legally obliged to submit to arrest without resistance not alone by an officer but even by a private individual. State v. Nolan, 354 Mo. 980, 192 S. W. (2d) 1016. In State v. Noland (Mo.), 229 S. W. 198 where a felon who was caught red-handed in the commission of a felony shot and killed a watchman, we held an instruction on self defense was not justified because the watchman had the right to arrest the defendant and defendant had no right to resist. See also State v. Batson, 339 Mo. 298, 96 S. W. (2d) 384. Under the circumstances of this case the killing of Garton was murder.

Ussery may not now complain of the evidence of his confessions for several reasons. There was substantial evidence that they were voluntarily given and the jury so found. But even more to the point Ussery himself removed any objection to admitting the confessions in evidence by testifying to the matters contained in them, thus confirming their truth. Involuntary confessions are rejected as evidence because they are regarded as testimonially [247] unreliable and untrustworthy. 22 C. J. S. p. 1427. Yet when the truth of a confession is established by the very person who made it under such

solemn circumstances as on oath in open court, he may not be permitted to claim error because of the use of the confession on the ground it was involuntary.

■ A motion for a continuance was filed because a copy of the examination of witnesses at the preliminary hearing had not been delivered to the jailer as required by Section 3879, R. S. 1939 Mo. R. S. A. The trial court heard evidence in support of the motion which showed Ussery's counsel were given a copy of the examination on September 24 which was 20 days before the date of trial, and denied the motion. The granting of a continuance is a matter for the discretion of the court and under the circumstances here we do not find the court abused its discretion.

Finding no error in the record the judgment is *affirmed*. All concur.