**STATE of Missouri, Respondent,**

v.

**Frank COOPER, Appellant.**

**No. 10173.**

Missouri Court of Appeals, Springfield District.

Aug. 6, 1976.

Motion for Rehearing or to Transfer to Supreme Court Sept. 2, 1976.

Application to Transfer Denied Oct. 12, 1976.

John C. Danforth, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

Frank Cooper, pro se.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

BILLINGS, Chief Judge.

Defendant Frank Cooper was convicted of second-degree murder [§ 559.020, RSMo 1969] by a Dunklin County jury and sentenced by the trial court under the Second Offender Act [§ 556.280, RSMo 1969][1] to a 50-year prison term. We affirm.

This appeal vividly demonstrates the inherent difficulties of a criminal defendant attempting to obtain appellate review of his conviction by proceeding *pro se*.[2] Shortly after the defendant's court-appointed trial attorneys filed the notice of appeal, the defendant discharged his attorneys.

The transcript was completed by the court reporter 22 days after judgment was entered and 17 days after the notice of appeal was filed. No request for an extension of time in which to file the transcript was ever made of the trial court and no order granting an extension was entered. In April of this year the state's motion to affirm the judgment because of defendant's dereliction in filing the transcript was denied, and we granted defendant two separate extensions of time in which to file the transcript. Our clerk received and filed the transcript June 1, 1976.

Defendant's *pro se* brief was filed the following day, June 2, and violates Rule 84.04, V.A.M.R., in most respects. It does not contain a fair and concise statement of the facts relevant to the questions sought to be presented for determination and is argumentative. One or more of the points fail to inform us as to wherein and why the ruling of the trial court is considered erroneous. The points are replete with abstract statements and include long lists of citations. The argument portion of the brief does not contain page references to the transcript and in the main consists of quotations of abstract statements from most of the 67 cases cited, without showing their applicability to actions or rulings of the trial court.

Somerville, J., of the Kansas City District, recently had occasion to discuss the matter of *pro se* briefs and the absolute necessity of such briefs complying with appellate procedural requirements and rules. In *State v. Sterling*, 536 S.W.2d 843, 845–846 (Mo.App.1976), Judge Somerville wrote:

"This court is being confronted with a steady progression of instances of accuseds in criminal cases on appeal filing pro se briefs even though their counsel of record have already filed briefs. Understandably, the pro se briefs which are filed rarely comply with the rules governing appellate procedure and, in many instances, infuse the respective appeals with elements of confusion. Appellate courts faced with this situation are placed in the incongruous position of either summarily rejecting such briefs for noncompliance with the rules, thereby giving the appearance of arbitrarily disregarding the rights of those seeking redress before them, or of expending an inordinate amount of time attempting to draw some semblance of meaning from them. In those instances where appellate courts, out of conscience, yield to the latter course, the entire appellate process is reined to almost a complete standstill because of the expenditure of time usually required to ferret out and understand the issues sought to be raised. Time and experience have taught that the adminis-

---

1. In addition to the two prior felonies charged in the information, defendant testified he had since been convicted of three more felonies.

2. Defendant's brief shows it was prepared by inmate Melvin Leroy Tyler. See: *State v. Tyler*, 454 S.W.2d 564 (Mo.1970); *Tyler v. State*, 485 S.W.2d 102 (Mo.1972); *Tyler v. State*, 496 S.W.2d 793 (Mo.1973); *Tyler v. State*, 501 S.W.2d 189 (Mo.App.1973); *Tyler v. Swenson*, 440 F.2d 621 (8th Cir. 1973); *Tyler v. Swenson*, 382 F.Supp. 1028 (E.D.Mo.1974), aff'd 527 F.2d 876 (8th Cir. 1976); *Tyler v. Swenson*, 527 F.2d 877 (8th Cir. 1976); *Tyler v. Wyrick*, 405 F.Supp. 779 (E.D.Mo.1975).

tration of justice is best served by adherence to procedural requirements and rules. When procedural requirements and rules are lightly ignored, confusion is most often the result, and if justice then emerges it is more by chance than by design. Pro se briefs in criminal cases filed out of time without leave of court, and which bear little or no resemblance to compliance with appellate procedural requirements and rules, in most instances, confuse rather than aid the appellate process. Unrestrained consideration of them tends to place meaningful appellate consideration of criminal appeals in serious jeopardy. Although this court, with great reluctance, has concluded to review the issues raised by defendant in his pro se briefs for the simple reason that existing case law prevails to support a ready disposition of them, a caveat is sounded with respect to entertaining issues sought to be raised in future criminal appeals by pro se briefs which fail to comply with appellate procedural requirements and rules. If accuseds in criminal appeals represented by counsel insist on representing themselves separate and apart from the efforts of counsel of record, then they must abide by and be bound by the same procedural requirements and rules imposed on counsel and stand ready to suffer the same consequences for non-compliance."

■ The foregoing applies equally to an appeal such as this one where a criminal defendant chooses to proceed solely *pro se*. We have given serious consideration to reviewing only those matters required by Rule 28.02 V.A.M.R., by reason of the multitude of violations by the defendant in prosecuting this appeal, but have concluded to review and rule the issues as we discern them from the briefs of the parties.

■ The defendant's main complaint relates to his confession[3] that he shot and killed George Williams, Jr. His motion to suppress this confession, because involuntary, was ruled adversely to him following a pretrial evidentiary hearing. There was substantial evidence to support the trial court's findings and conclusion that the confession was voluntarily given and therefore constitutionally sound and admissible. *State v. Lyle*, 511 S.W.2d 817 (Mo.1974). The jury, under proper instruction [MAI–Cr 3.44], found the confession was voluntarily given. Defendant's proffered instruction was contrary to Notes on Use No. 2 to MAI–Cr 3.44 and the court did not err in failing to give the same.

■ Another and more cogent reason exists as to why there is no merit in defendant's multiple contentions relative to his confession. Defendant voluntarily testified that he shot Williams but claimed the shooting was done to protect a homosexual third-party.

In *State v. Ussery*, 357 Mo. 414, 208 S.W.2d 245 (1948), the defendant confessed a robbery and killing to officers. His motion to suppress the confession for alleged involuntariness was overruled. He testified to the matters contained in the confession but claimed the shooting was in self-defense. The court's reasoning and ruling in *Ussery* is as follows:

"But even more to the point Ussery himself removed any objection to admitting the confession in evidence by testifying to the matters contained in them, thus confirming their truth. Involuntary confessions are rejected as evidence because they are regarded as testimonially unreliable and untrustworthy [citation omitted]. *Yet when the truth of a confession is established by the very person who made it under such solemn circumstances as on oath in open court, he may not be permitted to claim error because of the use of the confession on the ground it was involuntary.*"[4] 208 S.W.2d at 246–247 (emphasis added).

---

3. While defendant was under arrest and in custody in Jackson County for other crimes (robbery and auto theft) and confessing to those crimes, he told the authorities he had killed Williams a few days before in Dunklin County and told them where the body could be found.

4. See, *State v. Crow*, 486 S.W.2d 248 (Mo. 1972); *State v. Taylor*, 472 S.W.2d 395 (Mo. 1971); *State v. McGee*, 447 S.W.2d 270 (Mo. banc 1969), cert. denied, 397 U.S. 1056, 90 S.Ct. 1400, 25 L.Ed.2d 672 (1970); *State v. Grey*, 525 S.W.2d 367 (Mo.App.1975); *State v. Williams*, 522 S.W.2d 641 (Mo.App.1975).

■ Defendant avers the jury panel should have been discharged because in reply to a question on voir dire one of the members of the panel said: "I don't know for sure if it's the same Frank Cooper, but I was in Kennett for a while, in jail here for a while, I was in jail a little over two months with a Frank Cooper, and I think it's the same one. It may not be the same Frank Cooper." No authority is cited in support of this contention and the argument portion of defendant's brief is silent on the issue. When a point appears without citation of authority and little or no argument, it has not been preserved for appellate review. *State v. Warters*, 457 S.W.2d 808 (Mo.1970); *State v. Orr*, 493 S.W.2d 374 (Mo.App.1973). Furthermore, the evaluation of the effect of a prospective juror's remarks is largely entrusted to the discretion of the trial court. *State v. Turner*, 462 S.W.2d 723 (Mo.1971). The trial judge noted the panel member did not say he had been in jail with the *defendant* and that it was common knowledge that persons charged with crimes are arrested and placed in jail until they make bond. We find no abuse of discretion.

Defendant's complaint the jury panel should have been quashed because some of its members had heard or read news reports concerning the case is equally without merit. The trial judge made specific inquiry as to whether as a result of hearing or reading about the case any of the panel had formed an opinion concerning the guilt or innocence of the defendant. No member of the panel responded in the affirmative.

■ Familiarity with facts, or purported facts, from news reports without the formation of an opinion does not necessarily require disqualification of a juror. *State v. Spica*, 389 S.W.2d 35 (Mo.1965), cert. denied, 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966). Defendant's right to a fair and impartial jury does not extend to having a jury panel which is completely devoid of any news reports, and as the United States Supreme Court recently ruled in *Nebraska Press Association v. Stewart*, —— U.S. ——, 96 S.Ct. 2791, 49 L.Ed.2d ——, (U.S. June 30, 1976), " . . . [T]hese cases demonstrate that pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." Id. at ——, 96 S.Ct. at 2800.

In the case before us the defendant has wholly failed to demonstrate any prejudice as a result of the allegedly adverse pretrial publicity.[5] No challenge for cause was levelled at any of the panel members who acknowledged they had heard or read articles relating to the crime. We also take note of the fact that the defendant told his trial attorneys and the court that he did not want a change of venue from Dunklin County. We find no abuse of discretion in the ruling of the trial court.

In his final point the defendant contends the trial court erroneously permitted evidence of unrelated crimes to be considered by the jury, denying him a fair and impartial trial. The argument portion of defendant's brief does not refer to any transcript page in support of this point. The brief does not inform us what crimes the defendant alludes to in his point.

■ The general rule is that proof of the commission of separate and distinct crimes by the defendant is not admissible, unless the proof has a legitimate tendency to establish the defendant's guilt of the charge for which he is on trial. *State v. Kilgore*, 447 S.W.2d 544 (Mo.1969). However, there are five exceptions to the general rule. Such evidence will be admitted when it tends to establish (1) motive; (2) intent; (3) the absence of accident or mistake; (4) a common scheme or plan; or (5) the identity of the person charged. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (Mo. banc 1954).

---

5. The newspaper articles have not been filed in this appeal.

We know from the defendant's confession and trial testimony that after he fatally wounded Williams he fled the state in the victim's automobile. He took with him the rifle (owned by Williams) and threw it in a river somewhere in Arkansas. He also took Williams' hunting knife (thrown out of the car in Kennett) and a pistol belonging to Williams. In his flight he used a credit card issued to the dead man.

If, as we assume, the defendant's point and argument are directed to the foregoing matters, we have no hesitancy in holding such acts and conduct were clearly relevant to the issue of defendant's guilt of the murder of Williams. Flight is evidence of guilt. *State v. Simmons*, 494 S.W.2d 302 (Mo.1973). Evidence of another crime committed while in the process of flight is admissible. *State v. Bevineau*, 460 S.W.2d 683 (Mo.1970). The disposal of the murder weapon shows consciousness of guilt or desire or disposition to conceal the crime. *State v. Hudson*, 521 S.W.2d 43 (Mo.App. 1975).

We rule the evidence relating to the defendant's flight, the car, the rifle, the knife, the pistol and the credit card tended to establish the defendant's identity and his motive, intent and plan, as he put it, to "rip-off" Williams. The point is denied.

We have reviewed those matters required by Rule 28.02, V.A.M.R., and find no error.

The judgment is affirmed.

All concur.