STATE of Missouri, Plaintiff-Respondent,

v.

John Joseph PETRIK,
Defendant-Appellant.

No. 37955.

Missouri Court of Appeals,
St. Louis District,
Division Three.

April 26, 1977.

Lawrence O. Willbrand, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, Courtney Goodman, Pros. Atty., James R. Hartenbach, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

KELLY, Presiding Judge.

In this appeal from a conviction of Possession of a Schedule II Controlled Substance (Amphetamine) in violation of § 195.017 RSMo. 1969 and sentence of 12 years in the custody of the Missouri Department of Corrections, appellant, John Joseph Petrik, contends that he is entitled to have the judgment set aside and a new trial ordered because the trial court committed prejudicial error in three respects. Appellant's first Point Relied On is that the trial court erred in overruling his objection to argument of the prosecutor during the final portion of the State's argument with respect to punishment when the prosecutor had not argued punishment in the opening part of his argument. His second Point is that the trial court erred in failing to declare a mistrial when a police officer witness interjected into the case evidence of an unrelated crime. The third Point raised by the appellant is that the trial court erred in overruling his motion to suppress evidence of statements he made after he was taken into custody by reason of the failure of the arresting officers to give him his *Miranda* warnings. We have examined each of these contentions and find them to be without merit. We therefore affirm.

Appellant does not challenge the sufficiency of the evidence to support the jury verdict; therefore a shortened version of the facts which the jury could have found from the evidence will be sufficient for our purposes except where necessary in the disposition of appellant's Third Point Relied On we deem it necessary to further set out facts necessary for decision.

Jerry Guerra, a California resident, who was "involved in drugs," flew into St. Louis in October, 1974, with Thomas Kelly and appellant and went to appellant's house to stay. Guerra and Kelly shared a bedroom. In the bedroom Guerra told Kelly that he had a quantity of drugs, 25,000 to 50,000 pills, he was going to sell to Jack Wishnauf the following Saturday night. Guerra hid the drugs in appellant's attic. On the morning of October 20, 1974, Guerra died of a drug overdose at Christian Northwest Hospital in St. Louis County. During the course of the investigation of the death of Guerra the St. Louis County Police officers arrested appellant at a farmhouse in North St. Louis County after a conversation he had with Thomas Kelly in the kitchen of the farmhouse. The police officers were hidden in an adjoining bedroom and a kitchen pantry and overheard this conversation. After he was taken into custody, the appellant "voluntarily" accompanied the officers to his home in Woodson Terrace where a fruitless search was conducted and then to a rented car, the keys of which appellant had on his person when arrested, parked on Brackleight Lane in Florissant, Missouri, where suitcases containing 600,000 to 650,000 amphetamine pills were discovered in a locked trunk. After the drugs were found appellant was placed under arrest suspected of possession of controlled substances and given his *Miranda* warnings. Appellant was thereafter charged with possession of these Schedule II drugs.

On October 24, 1975, a hearing was had on appellant's motion to suppress evidence, allegedly obtained by means of a wiretap. This motion was overruled that same day, and on November 3, 1975, the day on which the cause was peremptorily set for trial, appellant's counsel filed another motion to suppress alleged statements and on this occasion, for the first time, alleged as grounds for the motion that the statements had been obtained from the appellant after he was in custody without advising him of his *Miranda* rights. This motion was overruled without a hearing.

In considering appellant's first point we have examined the transcript filed in this

court but have ascertained that it does not contain all of the argument and is only a partial transcript of same. Nevertheless, from what has been filed, we discern that the prosecutor in his opening argument made reference to that instruction given to the jury on the range of punishment to be assessed in case it found the appellant guilty of the offense for which he was on trial and argued that there was "a broad penalty involved here." He stated the range of punishment and remarked that the range of punishment was broad "to cover a broad range of crimes." In concluding his opening argument, the prosecutor said: "I will ask you to assess his punishment against him as provided by law." During his argument appellant's counsel made no mention of punishment, and then the prosecutor, in his rebuttal, argued:

"Now, as I said before, the penalty ranges anywhere from six (6) months minimum designed for little people; but that man is not 'little people,' he's a drug dealer and he deals in large quantities of drugs and he deserves the punishment at the other end of the range. He deserves the maximum and I ask that you find him guilty as charged and assess a serious penalty."

It is this argument which appellant contends entitles him to a new trial.

 This point has already been decided by appellate courts of this state, and the general rule is that if the matter of punishment is to be discussed at all, it should be argued in the opening portion of the state's argument in order to afford defense counsel an opportunity to answer that argument. As the court warned in *State v. Maxie*, 513 S.W.2d 338, 345 (Mo.1974), cert. den. 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975), "The failure to do so will cause serious risk of reversal for there are not many cases wherein the determination of no prejudice can be made on an appellate level in the area of argument." The argument here under attack, like that in *Maxie*, supra, did not ask for any particular punishment, but merely advised the jury to assess a "serious penalty." See also *State v.*

*Brown*, 480 S.W.2d 839, 840 (Mo.1972); *State v. Hale*, 371 S.W.2d 249, 255–256[12, 14, 15, 16] (Mo.1963). We find no abuse of discretion in the trial court's overruling of appellant's objection amounting to prejudice under the circumstances here. We rule this point against the defendant.

Appellant's second point is that the trial court erred in failing to declare a mistrial when one of the police officer witnesses, Lieutenant Mahoney, replied to a question propounded by the prosecutor by testifying that he overheard a conversation between the appellant and a third person, and during this conversation appellant remarked that "Jack shot me up once and it was really bad." This, appellant argues, constituted evidence of the commission of another crime brought into the case by the prosecutor in bad faith when he knew that the question asked of the witness would elicit this testimony. After this answer came in, appellant's counsel interposed his objection, requested that the jury be instructed to disregard the testimony and that a mistrial be declared. The trial court sustained the objection, instructed the jury to disregard the testimony and specifically cautioned the jury "not to take his (the witness's) last comment into consideration as evidence." This statement of the witness was not in evidence; rather, it was specifically excluded from the evidence in response to appellant's objection. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (Mo. banc 1954) is inapposite, because there evidence of another crime, unrelated to the one for which defendant was on trial, was in evidence and this was held to be error.

 As has oftentimes been said, the granting of a mistrial is a drastic remedy to be exercised only in extraordinary circumstances where the prejudicial effect can be removed in no other way, *State v. Harris*, 535 S.W.2d 145, 150 (Mo.App.1976), and rests in the sound discretion of the trial court who is in a better position than an appellate court to evaluate the prejudicial effect of the occurrence initiating the request for mistrial. *State v. Camper*, 391 S.W.2d 926, 927–928[3] (Mo.1965). The

gauge to be applied by a reviewing court where a mistrial has been denied was thus enunciated in *Harris*, supra, l.c. 150:

". . . the reviewing court, in order to hold that the failure to grant a mistrial was reversible error, must determine and conclude as a matter of law from the entire record that the error was prejudicial and so impressive that its effect was not removed by the action of the trial court."

We do not find the facts in this case meet this test and rule this point against the appellant.

Appellant's third, and final point, is that the trial court erred in overruling his motion to suppress statements made by him to the police after he was taken into custody without advising him of his *Miranda* rights.

■ Whether appellant's point would otherwise be well taken, we conclude that by taking the stand in his own defense and testifying to facts which corroborated the testimony of Detective Klier, the officer who conducted the interrogation of the appellant, any error, if error there was, was rendered non-prejudicial.

The only grounds stated in appellant's initial motion to suppress statements as a basis for suppression thereof was that the statements were the product of an illegal wiretap of a telephone conversation. At the hearing on this motion no evidence was adduced that any wiretap was involved. The trial court cannot be faulted for overruling a motion based on grounds unsupported by the evidence.

Assuming, arguendo, that the trial court should have considered the evidence adduced at the evidentiary hearing on the original motion in disposing of appellant's subsequent motion to suppress and thus erred in summarily overruling said motion, any error thereby induced into the case was cured when appellant testified at trial.

The evidence adduced at the initial motion to suppress was that while Detective Klier and other police officers were concealed in the farmhouse occupied by Jack Wishnauf and his girl friend, Sharon Reed,

appellant and a friend entered the kitchen where Thomas Kelly, an acquaintance was seated at the kitchen table, and incriminating statements made by the appellant to Kelly followed. Detective Klier overheard these statements from his place of concealment in the kitchen pantry until the appellant approached the sliding door to the pantry and attempted to jerk it open. At this point the Detective, with gun drawn, exited from the pantry, ordered the appellant to the kitchen table and to spread-eagle his legs. Detective Klier then frisked the appellant. The appellant's friend, Frank Assero, was then taken outside, questioned, and his car searched with his permission. Mr. Assero was then left outside with a police officer while Detective Klier returned to the kitchen and led appellant into the basement where he interrogated the appellant and appellant "consented" to accompany the police officers to his home to search for drugs. Ultimately appellant led the police officers to the rented car in Florissant where the drugs were recovered. Conversations which took place between appellant and the police officers while this was being accomplished were among the evidence appellant's motion sought to suppress, although the motion itself was in broad terms and did not specify them as such.

Detective Klier, over objection, testified at trial to essentially the same facts he had at the evidentiary hearing on the initial motion to suppress. We have carefully examined the testimony of the appellant during the defense case at trial and have concluded that in his testimony he has corroborated the testimony of the Detective in all respects save one. The only part of Detective Klier's testimony appellant takes issue with is the testimony of the Detective with respect to a portion of the conversation between appellant and Tom Kelly while the Detective was concealed in the pantry. According to Detective Klier, appellant was discussing with Kelly the fact that he was upset and that the police were onto Wishnauf and that the heat would be on. He opined that the police were probably watching Wishnauf and in no time the police

would arrive and begin an investigation and he was worried about that. He further stated that he did not trust Wishnauf and that he was worried because of the knowledge of the police of Wishnauf as an alleged drug dealer. In this context Detective Klier said that appellant made a statement that he wondered if he gave Wishnauf 20,-000 or 50,000 pills would that shut up Wishnauf. Appellant, during direct examination, was asked by his counsel:

"Q. Mr. Petrik, did you at any time make a statement about twenty five (25) or fifty thousand (50,000) pills?"

His reply to this question was: "A. No, I did not."

Reversible error cannot be predicated upon the admissibility of evidence which came in improperly and which a defendant himself later confirms by his own testimony. *State v. Sanders*, 473 S.W.2d 700, 703–704[2] (Mo.1971); *State v. Ussery*, 357 Mo. 414, 208 S.W.2d 245, 246[5] (Mo.1948); *State v. Cooper*, 541 S.W.2d 40, 43[3] (Mo.App. 1976).

In *Ussery*, supra, the court said, l.c. 246[5, 6]:

". . . Ussery himself removed any objection to admitting the confessions in evidence by testifying to the matters contained in them, thus confirming their truth. Involuntary confessions are rejected as evidence because they are regarded as testimonially unreliable and untrustworthy . . . Yet when the truth of a confession is established by the very person who made it under oath in open court, he may not be permitted to claim error because of the use of the confession on the ground it was involuntary."

We conclude the testimony of appellant denying any statement relative to 20,000 or 50,000 pills attributed to him by Detective Klier, in the face of his corroboration of the balance of statements he made to the Detective is not prejudicial and does not require a new trial.

The judgment is affirmed.

WEIER and GUNN, JJ., concur.