STATE of Missouri, Respondent,

v.

Samuel HOLLAND, Appellant.

No. 62320.

Supreme Court of Missouri,
En Banc.

June 30, 1983.

Mary-Louise Moran, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Henry Herschel, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant-appellant was charged with capital murder. In accordance with instructions given, he was convicted of first degree murder (felony murder), a violation of § 565.003, RSMo 1978, and sentenced to life imprisonment. His appeal presents five points of alleged error: I. Instructing on first degree murder when there was no indictment for that crime and the evidence was insufficient to support such an instruction; II. Submitting an improper modification of MAI–CR2d 2.12; III. Admitting his videotaped confession maculated for a multitude of reasons, e.g., it was involuntary and obtained in violation of right to counsel; IV. Refusing to appoint or provide funds for a forensic pathologist; V. Limiting his counsel's voir dire of the venire panel and permitting certain improper prosecutorial comment.

We affirm the judgment.

The evidence that supports defendant's conviction for first degree murder beyond a reasonable doubt points to events that began in the rectory of the Shrine of St. Joseph in North St. Louis. As Father Edward Filipiak, a 79 year old priest, sat alone in his room in the rectory, defendant and two companions broke into the church intent upon burglarizing its contents. The intruders explored the church and the rectory, handling various objects along the way. Defendant's thumbprint was deposited on a bottle of altar wine.

Attracted by the sound of a television program, defendant and his associates in crime entered the room of the unsuspecting Father Filipiak. Although the elderly priest pleaded that he had a heart condition, his urgings were unavailing; for his attackers bound him hand and foot, forced him to the floor in a fetal position and pummeled him mercilessly. A pillowcase had been put in the priest's mouth as a gag and another placed over his head. The victim suffered 16 broken ribs, a massive bruise to the chest covering the entire frontal thorax, bruises to the hands, a massive head bruise and a cerebral hemorrhage. He died sometime between the defendant's 9:30 p.m. entry into the church and rectory and the time of the discovery of his body between 8:30 and 8:45 a.m. the next morning. Cause of death was determined to be a combination of multiple factors: cerebral hemorrhage, shock caused by broken ribs and suffocation from the gag in his mouth and the pillowcase placed over his head.

The savage attack complete, defendant and his companions left their victim, apparently without much haste, taking with them as their paltry and malgained lucre an old television set, an electric razor and a few cartons of Kool cigarettes that had been given to Father Filipiak by a friend. The substance of the burglary was subsequently traced to the intruders.

Defendant, in a videotaped confession viewed by the jury, acknowledged the break-in to the church; he was the first to enter through a window. But he offered that he had not contributed to the priest's death, as he had only "just tapped" him about three times as he lay bound on the floor. He also admitted tying the priest's feet together, but in a humane fashion with string so that the nearly 80 year old man would be able to free himself. Neither did defendant observe any overwhelming assault on Father Filipiak although he acknowledged that all three intruders had participated in some sort of "light" physical battery to the bound and gagged elderly victim. But somehow through this "light tapping," binding and gagging, Father Filipiak's earthly life came to an end; and somehow his body came to bear the marks of a ruthless beating.

## I.

The charge was capital murder. The jury was instructed on capital murder, first degree murder (felony murder), conventional second degree murder and manslaughter. The jury verdict was for guilty on first degree murder, which brings forth the first point of defendant's appeal: alleged trial court error in instructing on first degree murder as a lesser included offense of capital murder when first degree murder was not specifically charged.

*State v. Goddard,* 649 S.W.2d 882 (Mo. banc 1983) answers this point directly. It specifically rejects the defendant's contention of error to instruct down to first degree murder when not so charged on a capital murder charge. *Goddard* also gave prospective application to *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982), which holds that murder in the first degree is not a lesser included offense when only capital murder is charged. *See State v. Betts,* 646 S.W.2d 94 (Mo. banc 1983) (also gives *Baker* prospective application). Thus, *Baker,* today, remains vital.

*Goddard* gives a thorough history of the status of the law regarding the requirements for instructing down in capital murder cases. In *Goddard* the conclusion is reached that there is an absence of prejudice to a defendant in instructing on first degree murder in the circumstance—as in this case—that the evidence which supports the first degree murder instruction "is exactly the same evidence which would have supported a conviction for capital murder." *Id.* at 889. Hence, the defendant in *Goddard* was not prejudiced by the first degree murder instruction, particularly as the form of submission had been approved in Missouri for many years and was the law extant at time of trial.

*Goddard* also notes that the defendant had ample notice that under a capital murder charge, he would also be on trial for first degree murder. Thus, no due process problem exists.

So, too in this case, defendant cannot complain of lack of notice or due process by the jury's being instructed on first degree murder on a capital murder charge; this for a variety of reasons, notably *State v. Daugherty,* 631 S.W.2d 637 (Mo.1982). *Daugherty* involved the trial and conviction for the first degree murder of Father Filipiak by one of defendant's co-accuseds. The defendant's co-actor, Daugherty, raised the identical point presented here: that it was error to instruct on first degree murder when the only charge was capital murder. In affirming the conviction for first degree murder, as is done in this instance, this Court in *Daugherty* stated *id.* at 645:

> Under his final point (5), appellant contends that the trial court erred when it instructed the jury on first degree murder because the statutory elements of capital murder did not include all the legal elements of murder in the first degree, and murder in the first degree is not specifically a lesser included offense of capital murder. The evidence upon the record was sufficient to support the submission of murder in the first degree. As to appellant's contention that murder in the first degree is not a lesser included offense of capital murder, this Court has held that failure to instruct on murder in the first degree where the evidence supports the submission of murder in the

first degree is reversible error. *State v. Gardner,* 618 S.W.2d 40 (Mo.1981). *See also State v. Wilkerson,* 616 S.W.2d 829 (Mo. banc 1981). The trial court's instruction on murder in the first degree in the instant case was not error. Point (5) is found to be without merit and is ruled against appellant.

The holding of *Daugherty* merely follows the earlier decision of this Court in *State v. Fuhr,* 626 S.W.2d 379 (Mo.1982), finding that under *State v. Wilkerson,* 616 S.W.2d 829 (Mo. banc 1981) and *State v. Gardner,* 618 S.W.2d 40 (Mo.1981) it was error to fail to instruct down to first degree murder on an offense occurring in February 1980.

Defendant was charged with capital murder. The trial court dutifully instructed the jury on capital murder, murder first degree (felony murder), conventional second degree murder and manslaughter, all as had been required until *Baker,* which had not been handed down at the time of trial. Even defendant offered his instruction on murder first degree, as he logically should by reason of *Fuhr,* and, certainly, by reason of his companion case, *Daugherty.* Indeed, defendant would have been surprised if the court had failed to instruct on first degree murder. But defendant now says that without indictment or information on first degree murder, there can be no conviction on that charge. We perceive no error in this instance. *State v. Goddard, supra.*

■■■ As stated in *State v. Lewis,* 642 S.W.2d 627, 630 (Mo. banc 1982), "[t]he purpose of an information or indictment is twofold: to inform the accused of charges against him so that he may prepare an adequate defense; and to preclude retrial on the same charges should a jury acquit him." These purposes are an expression of the proposition that due process requires that conviction be on a charge made. *See State v. Wilkerson,* 616 S.W.2d at 833. What follows does not warp these standards of legal rubric nor, for that matter, intrude upon the solution of *State v. Baker* to the failure to instruct down to § 565.003, RSMo

1978 first degree murder. Notice to the defendant is the keystone precept involved, and in this case defendant had an abundance of notice that first degree murder was going to be submitted to the jury. There was no violation of due process here. *State v. Goddard, supra.*

*State v. Gladies,* 456 S.W.2d 23 (Mo.1970) and *Montgomery v. State,* 454 S.W.2d 571 (Mo.1970) have been offered for the maxim that a proper charge is an essential ingredient to confer jurisdiction upon a court. And that is so. In *Montgomery,* the plea was to first degree robbery with no information filed as to that charge. The only information filed was to first degree murder. The court found a plea of guilty to a non-existent charge. In *Gladies,* the defendant pleaded guilty to an offense different and greater than that charged. So in *Montgomery* and *Gladies,* there were pleas of guilt to crimes which could not in any way have been considered proper subjects for instructing down. This case merely follows *State v. Goddard.*

## II.

■■■ Defendant alleges several instructional errors: First, he argues that the evidence was insufficient to support an instruction on capital murder. This point is moot because he was not convicted of capital murder. Second, he argues that the court erroneously applied Note on Use 5 to MAI–CR2d 2.12, because (a) it failed to define the proper initially contemplated offense, and (b) it failed to give a separate instruction on that offense. Third, he argues that the third, fourth and fifth paragraphs of MAI–CR2d 2.12 were incorrectly omitted from the four verdict directors in violation of Note on Use 6 to MAI–CR2d 2.12. Finally, he contends that the instruction on robbery given in conjunction with the instruction on felony murder incorrectly stated the law.[1] None of these points is meritorious.

---

1. The following instructions were given:
   INSTRUCTION NO. 9

   If you do not find the defendant guilty of capital murder, then you must consider whether he is guilty of murder in the first degree.

■ The giving or failure to give a proper instruction is error, the prejudicial effect of which, if any, to be judicially determined. Any error that flows from noncompliance with MAI–CR2d is deemed prejudicial unless the contrary clearly appears. Rule 28.02(e); *State v. Betts,* 642 S.W.2d 604, 606 (Mo.1982).

Turning to defendant's second allegation of instructional error—that the trial court failed to define the proper initially contemplated offense in a separate instruction—Note on Use 5 to MAI–CR2d 2.12 states:

> If you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about September 29, 1979, in the City of St. Louis, State of Missouri, certain persons with the aid or attempted aid of the defendant, committed the offense of murder in the first degree, in that certain persons with the aid or attempted aid of the defendant, caused the death of Father Edward Filipiak by striking and suffocating him, and that certain persons with the aid or attempted aid of the defendant, did so in robbing or attempting to rob Father Edward Filipiak, and
> Second, that the defendant, either before or during the commission of the offense of murder in the first degree, with the purpose of promoting its commission, aided such other persons in committing that offense,
> then you will find the defendant guilty of murder in the first degree.
> However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
> A person forcibly steals, and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:
> (a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
> (b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.
> INSTRUCTION NO. 11
> If you do not find the defendant guilty of capital murder or murder in the first degree, you must consider whether he is guilty of murder in the second degree.
> If you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about September 29, 1979, in the City of St. Louis, State of Missouri, certain persons with the aid or attempted aid of the defendant, committed the offense of murder in the second degree, in that certain per-

"If MAI–CR 2.12 is used, the court must give a separate instruction defining the offense initially contemplated, and must define any word used in the definition which must be defined according to Notes on Use under any MAI–CR form applicable to that offense."

■ Defendant contends with regard to all four verdict directors that Note 5 required the court to present instructions defining burglary and/or robbery. With respect to the verdict directors on murder second degree and manslaughter, defend-

> sons with the aid or attempted aid of the defendant, caused the death of Father Edward Filipiak by striking and suffocating him, and that certain persons with the aid or attempted aid of the defendant, intended to cause serious bodily harm to Father Edward Filipiak, and that certain persons with the aid or attempted aid of the defendant, did not do so in fear suddenly provoked by the unexpected acts or conduct of Father Edward Filipiak, and
> Second, that the defendant, either before or during the commission of the offense of murder in the second degree, with the purpose of promoting its commission, aided such other persons in committing that offense,
> then you will find the defendant guilty of murder in the second degree.
> However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
> INSTRUCTION NO. 13
> If you do not find the defendant guilty of capital murder, or murder in the first or second degree, you must consider whether he is guilty of manslaughter.
> If you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about September 29, 1979, in the City of St. Louis, State of Missouri, certain persons with the aid or attempted aid of the defendant, committed the offense of manslaughter, in that certain persons with the aid or attempted aid of the defendant, caused the death of Father Edward Filipiak by striking and suffocating him, and
> Second, that the defendant, either before or during the commission of the offense of manslaughter, with the purpose of promoting its commission, aided such other persons in committing that offense,
> then you will find the defendant guilty of manslaughter.
> However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then you must find the defendant not guilty of that offense.

ant's argument ignores the fact that the evidence was sufficient to support a finding that he had initially contemplated second degree murder or manslaughter. Moreover, Note 5 applies to the offense that the jury must determine was committed by someone in order to find that party liability attached to a defendant. It does not apply to offenses or elements of offenses neither charged nor required to be found for a conviction. *State v. Guyton,* 635 S.W.2d 353, 357 (Mo.App.1982).

■ With respect to the verdict director on murder in the first degree in robbery, a finding that a robbery occurred is not necessary to establish party liability for murder in the first degree in robbery. What is required for party liability is a finding that murder in the first degree in robbery occurred. That is, first degree murder is the offense "initially contemplated" within the meaning of Note 5. Of course, the law of felony-murder requires a finding of one of the named felonies in § 565.003, RSMo 1978; and, certainly, the verdict director given required the jury to find that defendant robbed or attempted to rob the victim. It also defined robbery. But the law of party liability implemented in Note on Use 5 to MAI-CR 2.12 does not require more than a finding that first degree murder occurred because that offense, and not robbery, is the initially contemplated offense for the purposes of party liability.

Moving ahead to defendant's third allegation—that the court erroneously omitted paragraphs three, four and five of MAI-CR2d 2.12 in violation of the mandate of Note on Use 6 of MAI-CR2d 2.12—we hold

that the above reasoning is dispositive.[2] These paragraphs are unnecessary where a defendant is not charged with an offense other than the one originally contemplated. Note 6 of MAI-CR2d 2.12 refers to Note 4 of MAI-CR2d 2.10, which makes the application of Note 6 clear: It applies only where a defendant can be convicted of more than one offense.[3] Defendant obviously could not be convicted of both felony murder and the predicate felony. *State v. Mahaney,* 625 S.W.2d 112, 114 (Mo. banc 1981); *State v. Morgan,* 592 S.W.2d 796, 803 (Mo. banc 1980). For the purposes of MAI-CR2d 2.12, the underlying felony and felony murder are the same offense, and paragraphs three, four and five are unnecessary. See *State v. Emory,* 643 S.W.2d 24, 27–28 (Mo.App.1982).

■ Returning to the second portion of defendant's second allegation of instructional error—that the court erred in failing to give a *separate instruction* defining the offense initially contemplated—we find no prejudicial error, because the verdict directors adequately hypothesized all the essential elements of the initially contemplated offense. The issue has been repeatedly decided against defendant's position. *State v. McIlvoy,* 629 S.W.2d 333, 337 (Mo. banc 1982); *State v. Colvin,* 637 S.W.2d 388, 389 (Mo.App.1982); *State v. Flowers,* 630 S.W.2d 585, 586 (Mo.App.1981); *State v. Simpson,* 614 S.W.2d 31, 33 (Mo.App.1981).

■ Defendant's final allegation of instructional error is that the first degree murder verdict director incorrectly hypothesized the predicate felony, namely, robbery.

**2.** 6. The Third, Fourth and Fifth paragraphs must all be included if the defendant is being charged with an offense committed by another person but other than the original offense contemplated by defendant that he and the other person would commit. See Note 4 under MAI-CR 2.10.

**3.** 4. The second paragraph of 2 of MAI-CR 2.10 deals with responsibility of the defendant for offenses committed by others but other than the offense initially contemplated by the defendant. It deals, for example, with a defendant's responsibility for an assault committed by a person whom the defendant is aiding

in the commission of a burglary. This paragraph should be included only where the defendant is charged with the second offense (assault in the example given above). It must be supported by evidence; if not supported by evidence the defendant would be entitled to an acquittal on motion as a matter of law. The law stated in this paragraph is derived from Section 562.036 which renders a defendant responsible for an offense committed by another person (assault in the example given above) only if the defendant had the "required culpable mental state" for the offense (the assault in the example given). Section 562.036.

He argues that while it set out the elements of stealing, it should have set out the elements of robbery in the first degree. Defendant's proposition in this regard is without merit. First, murder in the first degree in robbery does not require robbery in the first degree as its underlying felony. Sec. 565.003, RSMo 1978. Second, "forcibly steals" as defined for the jury in an instruction following MAI–CR2d 33.01 and § 569.010.1, RSMo 1978, is coterminous with robbery;[4] and, thus, a definition of robbery that tracks § 569.010.1, RSMo 1978, is an adequate definition of robbery for the purposes of murder in the first degree in robbery. There was no prejudicial error in the instructions.

### III.

In his third allegation of error, defendant contends that a videotaped confession should have been suppressed because it bears the blemish of statements earlier elicited from him in violation of the juvenile code. Four statements, including that which was videotaped, are in question. This contention need not be decided, because the admission of the statement could not possibly have been prejudicial to defendant by reason of his subsequent testimony admitting every material fact contained in the statement and declaring under oath that it was true. *State v. Brown,* 404 S.W.2d 179, 182 (Mo.1966), quoting from *State v. Ussery,* 357 Mo. 414, 208 S.W.2d 245, 247 (1948), is directly in point in law and fact: "[W]hen the truth of a confession is established by the very person who made it under such solemn circumstances as on oath in open court, he may not be permitted to claim error because of the use of the confession on the ground it was involuntary." *See also State v. Petrik,* 550 S.W.2d 613, 617 (Mo.App.1977). In the case at bar, as in *Brown,* defendant testified in his own

behalf and testified to substantially the same facts as in the earlier statement. Moreover, he clearly stated under oath that his videotaped statement was the truth and that he had made it because he was a truthful person. Defendant thus resolved the issue of the voluntariness of the videotaped statement and dispelled any taint from the earlier statements.

### IV.

Defendant next alleges that the trial court erred in refusing either to appoint or to provide funds for an independent forensic pathologist to evaluate the medical evidence of the prosecution and thereby denied him effective assistance of counsel, due process and equal protection of the law. He contends that there was a substantial question requiring expert testimony concerning the cause and time of the victim's death and that his defense could not be fully developed without professional assistance. He argues, specifically, that unaided by an independent forensic pathologist, his defense counsel was unable to explore what he characterizes as an inconsistency in the testimony of the medical examiner at the trial of his co-defendant Daugherty, the testimony at defendant's trial and the original report, towit: he states that at Daugherty's trial the medical examiner testified that there were two causes for the victim's death: anoxia and hemorrhage. At defendant's trial, the medical examiner testified that shock, anoxia and hemorrhage may have caused death. Finally, the medical examiner's written report indicated that anoxia caused death. The gravamen of defendant's point is that the victim may have actually died of heart failure before the robbery occurred. Thus, he argues, neither robbery nor murder in the first degree in robbery could have occurred.

4. Forcibly steals.

> [*As used in chapter 569*] a person forcibly steals, *and thereby commits robbery,* when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:

> (a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
> (b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft. [569.010(1)]. (Emphasis added)

This Court has ruled that the state is not constitutionally mandated to provide such services at public expense. *State v. Williams,* 603 S.W.2d 562, 566 (Mo.1980). Whether to provide public funds to aid an accused in the preparation of his defense is within the discretion of the trial court. *United States v. Moss,* 544 F.2d 954, 961 (8th Cir.1976), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977); *State v. Aguelera,* 326 Mo. 1205, 33 S.W.2d 901, 904 (1930).

A review of the entire record reveals no suspicious inconsistency in the medical examiner's testimony and report. He presented his conclusions in the alternative, and each, according to his testimony, was supported by his initial report. Moreover, neither his report nor his testimony at trial suggested that heart failure was the cause of death. Furthermore, it was defendant's testimony that the victim was alive at the time of the robbery and that he and the others struck and "stomped him" while he was tied, gagged, and his head was covered with a bag. Thus, defendant testified to those issues that he now claims were in doubt after the medical examiner's testimony.

## V.

Finally, defendant contends that the trial court erred when it permitted the prosecution to make certain statements to the venire panel and when it refused to permit his trial counsel to pose questions on voir dire to assess the effect of the prosecution's remarks. Specifically, he alleges that the trial court improperly allowed the prosecution to state that defendant had requested a severance of his trial from those of his co-defendants and improperly refused to allow his trial counsel to determine whether members of the venire panel harbored prejudices towards those co-defendants.

"A transcript on appeal must contain all of the records and proceedings necessary to a determination of the questions presented for decision, and where any such items are absent there is nothing for the appellate court to decide." *State v.*

*Hamilton,* 612 S.W.2d 141, 143–44 (Mo.App. 1980); Rule 81.12(b); Rule 81.14(a). The trial court has broad discretion in determining the propriety of questions during voir dire, and absent an abuse thereof, the reviewing court should not interfere. *State v. Garrett,* 627 S.W.2d 635, 642 (Mo. banc 1982). The record in this case reveals only that prosecution made the neutral, passive voice remark that "[a] severance has been requested and granted." There is no suggestion in this statement that defendant requested the severance nor that there had been other convictions in the case. There is, thus, no record before this court to indicate that the trial court abused its discretion during the conduct of voir dire.

The judgment is affirmed.

HIGGINS, J., concurs.

RENDLEN, C.J., concurs in separate opinion filed.

FINCH, Senior Judge, concurs in result in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

DONNELLY, J., and SEILER, Senior Judge, dissent and concur in separate dissenting opinion of WELLIVER, J.

BILLINGS and BLACKMAR, JJ., not participating because not members of the Court when cause was submitted.

RENDLEN, Chief Justice, concurring.

I concur in the majority opinion but make the following observations concerning the dissenting opinion which compares apples with oranges. *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982), *cert. den.,* —— U.S. ——, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983), held that a capital murder defendant was not entitled to a first degree instruction, not supported by the evidence. The offense was committed after January 1, 1979, and § 556.046.1(2), RSMo Supp.1979 made it clear that "instructing down" was not required in homicide cases, unless there was evidentiary support for the lesser offense.

This wholly sound proposition has been followed in later cases. As the *Baker* opinion points out, the Supreme Court of the United States holds, emphatically, that there is no due process problem. *Hooper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). There is no reason why *Baker* should not be applied to any case in which the homicide occurred after January 1, 1979.

*State v. Goddard,* 649 S.W.2d 882 (Mo. banc 1983), involved an offense committed in October of 1980. The jury was instructed on first degree murder. This instruction was improper by the *Baker* rule, but the trial court had no way of knowing this, and followed earlier cases indicating that it was obliged to instruct down. The jury convicted of the lesser offense. We found that the instructing down was not prejudicial to the defendant, on the facts of the case.

The present case likewise involved an alleged improper instructing down, for a 1979 killing. The defendant requested a first degree instruction, and the jury convicted of first degree. *Goddard* is clearly applicable. There is no prejudice.

There is no reason the holdings in *Goddard* and *Holland* should require the retrial of *Baker* nor cases applying the rule of that case.

FINCH, Senior Judge, concurring in result.

I conclude that whether it was error to instruct on first degree murder in this case is governed by this court's decision in *State v. Goddard,* 649 S.W.2d 882 (Mo. banc 1983). The effect of that decision is that when, as here, the trial preceded the decision in *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982), instructing down to first degree murder when capital murder is charged does not violate the rule stated in *State v. Gladies,* 456 S.W.2d 23 (Mo.1970) and *Montgomery v. State,* 454 S.W.2d 571 (Mo.1970). On that basis I feel compelled to and do concur in the result reached in the principal opinion.

WELLIVER, Judge, dissenting.

This case demonstrates that the Court continues to hold that first degree murder both is and is not a lesser included offense of capital murder. The principal opinion relies on *State v. Goddard,* 649 S.W.2d 882 (Mo. banc 1983) [No. 63476], to hold that appellant was properly convicted of first degree murder under a charge of capital murder. Since I was unable to persuade a majority of the Court with my dissent in *Goddard,* normally I would accede to the will of the majority and, bound by *Goddard,* concur in the principal opinion. The Court itself, however, has not consistently followed *Goddard.* Instead it has applied *State v. Baker,* 636 S.W.2d 902, 904–05 (Mo. banc 1982), *cert. denied,* — U.S. ——, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983), either retroactively or prospectively solely to affirm the conviction before the Court at the moment. I cannot in good conscience join such inconsistency, which in my view has long since become a violation of both due process and equal protection. I am compelled to continue to voice my dissent.

I

A review of our recent cases addressing the relationship between capital murder and first degree murder demonstrates the Court's vacillation.

Our cases prior to *Baker* held that first degree murder was a lesser included offense of capital murder under § 556.046, RSMo 1978, the current lesser included offenses statute effective January 1, 1979. *State v. Daugherty,* 631 S.W.2d 637, 645 (Mo.1982); *State v. Fuhr,* 626 S.W.2d 379, 379 (Mo. 1982). *Baker* recognized that those cases erroneously relied on cases that interpreted a previous, and different, lesser included offenses statute. *Baker* held that first degree murder is not a lesser included offense of capital murder under § 556.046 and that Baker, who received the death penalty, had not been entitled to an instruction on first degree murder under a charge of capital murder. 636 S.W.2d at 904–05.

Thereafter in three cases convictions were affirmed on the authority of *Baker.*

*State v. Betts,* 646 S.W.2d 94, 96 (Mo. banc 1982); *State v. Woods,* 639 S.W.2d 818, 819 (Mo.1982); *State v. Blair,* 638 S.W.2d 739, 747 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). Each case clearly applied *Baker* retroactively. *Baker* was decided August 23, 1982, while the trials in *Betts, Woods,* and *Blair* each occurred before that date. *See Betts,* 646 S.W.2d at 95; *Blair,* 638 S.W.2d at 746; Brief of Appellant at 4–5; *State v. Woods,* 639 S.W.2d 818 (Mo.1982). In fact, *Betts* specifically noted that "*Baker* was in effect at the time of trial" in October 1980. 646 S.W.2d at 96. That language can be read only as a retroactive application of *Baker.*

The Court began to find problems with the *Baker* holding, however, when it was faced with a case such as this one in which the defendant had been charged with capital murder and convicted of first degree murder. Trial courts are without subject matter jurisdiction to convict defendants of crimes with which they are not charged. *State v. Gladies,* 456 S.W.2d 23, 25 (Mo. 1970); *Montgomery v. State,* 454 S.W.2d 571, 574–75 (Mo.1970). If first degree murder is not a lesser included offense of capital murder, a defendant convicted of first degree murder under a charge of capital murder is denied due process of law because he is convicted of a crime with which he is not charged. *DeJonge v. Oregon,* 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278 (1937); *Goddard,* 649 S.W.2d at 891 (Welliver, J., dissenting); *State v. Wilkerson,* 616 S.W.2d 829, 833 (Mo. banc 1981); *State v. Smith,* 592 S.W.2d 165, 165 (Mo. banc 1979). In order to avoid this result the Court in *Goddard* held that *Baker* was to be applied prospectively from the date it was decided and not retroactively to January 1, 1979, the effective date of § 556.046. *Goddard,* 649 S.W.2d at 889. Significantly, the opinion made *no* mention of the prior contrary holdings in *Betts, Woods,* and *Blair.* By applying *Baker* prospectively, the Court in essence held that the *Baker* rule was created for the sole purpose of affirming Baker's conviction and death sentence. The *Goddard* rationale served both to affirm God-dard's conviction and keep Baker's conviction and death sentence intact.

*Goddard* itself caused the Court problems almost immediately. The defendant in *State v. Williams,* 652 S.W.2d 102 (Mo. banc 1983), a kidnapping-murder case, was charged with and convicted of capital murder and sentenced to death. The trial court refused to instruct the jury on first degree murder. The Court ignored *Goddard,* which it had decided only one month earlier, and found no error in the failure to instruct the jury on first degree murder even though the trial had been held almost a year before *Baker* was decided. *Williams,* 652 S.W.2d at 114. In fact, the Court relied squarely on *Baker, Betts,* and *Blair,* applying *Baker* retroactively despite my argument in dissent that to do so was inconsistent with *Goddard.*

The principal opinion in this case exacerbates the confusion by once again applying *Baker* prospectively. By doing so appellant's conviction can be affirmed. Interestingly, the principal opinion relies on both *Goddard* and *Betts,* cases that can in no way be reconciled. The principal opinion states that *Betts* "also [gave] *Baker* prospective application," but that statement flatly contradicts the plain language of *Betts. See Betts,* 646 S.W.2d at 96.

## II

I submit that *Goddard, Williams,* and the principal opinion rest solely on the unarticulated premise that the defendant in each case is guilty and that his conviction should be affirmed at any cost. Such result oriented decisionmaking is not justice. "We are bound to decide cases in accordance with principles of justice and not on the basis of our own perception of guilt or innocence." *Goddard,* 649 S.W.2d at 892 (Welliver, J., dissenting). The majority has ignored this fundamental precept. Instead, it has treated similarly situated defendants differently in a transparent effort to avoid granting them new trials. Whether *Baker* is to be applied retroactively or prospectively is a question of state law, but whenever the application of state law trammels federal

constitutional rights the question becomes one of federal constitutional law. *Chapman v. California,* 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967). Therein lies the "catch-22 into which the majority has written the Court in an effort to affirm criminal convictions." *Goddard,* 649 S.W.2d at 890 (Welliver, J., dissenting). The disparate treatment of similarly situated defendants, such as Goddard and Holland on the one hand and Williams on the other, manifestly breaches the guarantee of equal protection of the laws to one group of defendants or the other. Concomitantly, the process afforded—either instruction on and conviction of first degree murder or failure to instruct on that offense—deprives defendants on one hand or the other of due process of law.

Our government was created as one of laws and not of men. The majority has frustrated this framework by substituting its own judgment of guilt for the rule of law. That is not the function of this Court. We are not guardians of society. Our duty is to dispense justice evenhandedly in accordance with established principles of law. Inconsistent application of those principles is tantamount to nonapplication of those principles. What Judge Learned Hand said a quarter century ago applies with equal force today. "For myself," he said, "it would be most irksome to be ruled by a bevy of Plantonic Guardians, even if I knew how to choose them, which I assuredly do not." L. Hand, *The Bill of Rights* 73 (1958). *See also Plyler v. Doe,* 457 U.S. 202, 242, 102 S.Ct. 2382, 2408, 72 L.Ed.2d 786 (1982) (Burger, C.J. dissenting).

I cannot join in holding that under the same statute, § 556.046, first degree murder both is and is not a lesser included offense of capital murder.[1] I therefore respectfully dissent.[2]

---

1. I concurred in *Baker.* I also concurred in *Blair* and wrote the opinion in *Woods,* both of which applied *Baker* retroactively. I joined Senior Judge Seiler's dissent in *Betts,* but that dissent rested on grounds other than the application of *Baker.*

My views regarding the continued viability of *Baker* are set forth in my *Goddard* dissent and need not be fully detailed here. *See Goddard,* 649 S.W.2d at 891 (Welliver, J., dissenting). It suffices to say that I have concluded that it might be appropriate to overrule *Baker* and construe § 556.046 as reflecting a legislative intent that § 556.046 work no change in the law that existed at the time of its enactment. *Id.* at 892 (Welliver, J., dissenting).

I adhere, however, to my position in *Goddard* that § 556.046 must apply to all cases in which trials were held after January 1, 1979, the date § 556.046 became effective. The statute cannot mean one thing in one case and something else in another. Particularly is this true when, as with this issue, we deal with cases in which the death penalty has been imposed. As noted above, *Goddard* in effect held that the rule in *Baker* was created to permit affirmance of Baker's conviction and death sentence. Blair's trial occurred before *Baker* was decided, and thus, under *Goddard,* Blair should have received an instruction on first degree murder. *Williams* ignored *Goddard* in order to affirm another death sentence. Three men, therefore, are currently scheduled to die by reason of the Court's vacillation.

2. The legislative effort to solve this problem is embodied in H.C.S.S.C.S.S.B. 276, sec. 1, §§ 565.020–.025, 82d Gen.Assem., 1st Reg. Sess. (1983), signed by the Governor June 15. The bill becomes effective July 1, 1984. *Id.* sec. A. The effective date of this legislation leaves a full year for the further compounding of the error caused by the Court's vacillation on this matter.